IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERIC GREENE | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| JOHN PALAKOVICH, et al. | : | NO. 04-5200 |

REPORT AND RECOMMENDATION

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE                             January 26, 2006

Before the Court is Petitioner Eric Greene's[1] (alternatively "Greene" or "Petitioner")

pro se petition for the issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. §

2254.  Greene, who is presently a resident of the State Correctional Institution-Smithfield

in Huntingdon, Pennsylvania[2] challenges his 1996 conviction and life sentence for second

degree murder, three counts of robbery and conspiracy.  In his rambling petition, he seeks

application of the writ for reasons associated with the trial court's refusal to sever his trial

from that of his co-defendants, certain evidentiary rulings, his apparent inability to get

access to the transcript of the trial proceedings and alleged ineffective assistance of

counsel.  For the reasons set out below and pursuant to 28 U.S.C. § 2254(d)(1), this Court

**RECOMMENDS** that the petition be **DISMISSED**, but that a certificate of appealability be

**GRANTED** with respect to Petitioner's Sixth Amendment confrontation claim arising out of

the introduction of evidence of two of his co-defendants' redacted confessions.

---

[1]Greene is also known as Jermaine Trice.  Indeed, this was the name used at the
time of trial which led to his current incarceration.

[2]We note that Petitioner is not currently a resident of this district in that his place of
incarceration is in Huntingdon, Pennsylvania in the Middle District.  See 28 U.S.C. §
118(b).  Nonetheless, venue is proper here in that his current confinement is the result of
his prosecution and conviction in Philadelphia County.  See 28 U.S.C. § 2441(d).

I.   **BACKGROUND**[3]

A.   **Procedural History**

On March 16, 1996, Greene was convicted in the Philadelphia Court of Common Pleas of second degree murder, three counts of robbery and conspiracy. He filed timely post-trial motions raising various claims concerning: (1) trial court error by failing to sever his trial from that of his co-defendants; (2) trial court error by admitting evidence concerning another robbery; (3) trial court error by failing to grant a mistrial after a police officer vouched for the credibility of a prosecution witness; and (4) prosecutorial misconduct during closing argument. The trial court ultimately denied these motions in an opinion filed on March 10, 1997. Greene was then sentenced to lifetime incarceration.

A timely appeal was filed with the Pennsylvania Superior Court. It was denied in an opinion filed on December 16, 1997. A petition for allocator with the Pennsylvania Supreme Court was initially granted on August 14, 1998. On April 29, 1999, however, that same court entered an Order declining to accept the appeal, stating that allocator had been improvidently granted. Petitioner did not file a petition for certiorari with the United States Supreme Court. Thus, his state court conviction became final on July 29, 1999. See Sup. Ct. R. 13(1).

On August 3, 1999, Greene filed a pro se petition seeking state collateral review under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. §§ 9541-46. In the pro se petition, he raised issues pertaining to ineffective assistance of counsel;

_____

[3]In preparing this Report and Recommendation, we have reviewed Petitioner's Form Application for Habeas Corpus Under 28 U.S.C. § 2254, Petitioner's "Brief for Petitioner", the District Attorney's Response to the Petition; Petitioner's Response to the District Attorney's Response and the trial transcript provided to us by the District Attorney.

prosecutorial misconduct during closing argument; and trial court error in admitting evidence concerning another robbery.  Counsel was appointed and, on July 7, 2000, filed a no merit letter.  On August 22, 2000, the trial court, acting as the PCRA court, dismissed the petition.  An appeal followed.  On December 31, 2003, the appeal was denied and the Superior Court affirmed the PCRA court's decision.  The Pennsylvania Supreme Court denied allocator on July 27, 2004.

**B.**   **Factual Background**

Greene's conviction grew out of a December 11, 1993 robbery of a Philadelphia food market.  The trial court's opinion denying Greene's post-trial motions sets out the circumstances of that robbery and another offense relevant to our consideration of the issues raised in this petition.  Note that Greene was tried under the name of Jermaine Trice and is referred to by the trial court judge as Trice.

> On Saturday, December 11, 1993, Jermaine Trice, defendant herein (a/k/a/ Eric Greene) along with Gregory Womack, Atil Finney, Naree Abdullah and Julius Jenkins agreed in street parlance, to "get paid," i.e., to rob Lilly's Market, 3122 West York Street, Philadelphia, Pennsylvania. Demond Jackson, who was present but did not enter into the Conspiracy, asked for a ride to "West Philly."  He later testified against the defendants.
>
> Gregory Womack drove his car, a 1979 Oldsmobile Cutlass Cruiser, a 4-door silver color station wagon with the four other conspirators. Demond Jackson, the non-conspirator who had asked for a ride, was also in the car.
>
> Jackson, Womack and Abdullah waited in the car as this Defendant, Jermaine Trice (a/k/a Eric Greene), Atil Finney and defendant Jenkins entered the store.
>
> Julius Jenkins went to the counter along with Jermaine Trice.  At the cash register were Anna Azcona and her sister, Andrea Rodriguez.  Francisco Azcona was not immediately visible.

Jenkins announced a hold-up and demanded the cash. Francisco Azcona was kneeling on the floor stocking shelves. As he tried to stand up, Jenkins shot and killed him.

After the shooting, Trice grabbed the cash register and all three returned to the car.

Womack drove all six to Naree Abdullah's home where the money was divided among the conspirators. The passenger, Jackson, was offered a share of the money but refused. He did not want to be included in the robbery.

Francisco Azcona was killed with a .45 revolver, which shot a .44 caliber bullet.

Three days after the homicide, in the same 1979 Oldsmobile, four of the defendants, excluding Finney; i.e., Trice (a/k/a/ Greene), Abdullah, Jenkins and Womack were in the vicinity of Ace Check Cashing, located at 29th and York Streets in Philadelphia, two blocks from Lilly's Market. (All four have been convicted of a separate Robbery at that location but that fact was not allowed as evidence in this case.) The Court ruled that proof of other crimes was not evidence in this case but access to a weapon was admissible. Since evidence of that crime was not admissible at this trial, the allowable evidence disclosed that they were all in the area of the Ace Check Cashing Agency and all left abruptly.

As they exited the agency, and entered the awaiting car, Police Officer McKeever observed what was happening and followed them attempting to stop the car. Other police, who arrived subsequently, recovered a .45 caliber revolver near the location where Jenkins and Abdullah were arrested. The gun had been abandoned in the vicinity of their arrest.

A comparison of the fatal bullet, a .44 recovered from the body of Francisco Azcona and submitted to Ballistics by the Medical Examiner, with the gun recovered after the Ace Check Cashing incident, revealed that the .45 revolver was the same gun used to kill Francisco Azcona three days earlier.

Both the homicide at Lilly's Market and the subsequent incident near the Ace Check Cashing have certain similar distinctive characteristics. Four of the five defendants in this case knew each other and were together; the same car was used; the location of each incident was within two blocks of each other; the .45 calibre gun at the Ace Check Cashing Agency incident was the same gun in the possession of the killer in this case. This court ruled that the incident at the Check Cashing Agency was not a signature crime where proof of one would prove the other. However, evidence of the parties' relationship to each other, the gun and similarity of the

4

car was admissible. All of these factors were considered by the jury in this case. Jenkins, who was armed with the fatal gun, was tried by a "death penalty" qualified jury. The others were tried subject to possible Second Degree Murder, Robbery and Conspiracy charges.

Commonwealth v. Trice, C.P. No. 95-06-0118, slip op. at 1-3 (Phila. Co. Mar. 10, 1997)

**C.     Nature of Claims**

Our initial challenge is to sort out and categorize Petitioner's various claims for relief. We start with his "Form Application for Habeas Corpus under 28 U.S.C. § 2254" ("Form Application") where he articulates five claims as follows:

1.     Denial of the right to an effective appeal because of the trial court's failure to provide a complete trial transcript and because of all prior counsel's ineffectiveness in failing to obtain the missing trial transcripts;

2.     Several violations of his rights caused by the trial court's failure to sever his trial from that of his co-defendants;

3.     Trial court error in admitting evidence of a separate, unrelated robbery;

4.     All prior counsel's ineffective assistance; and

5.     Denial of his right to appeal the PCRA court's decision.

On closer examination, however, and when read in conjunction with his "Brief for Petitioner", we believe it would be proper to say that Greene has asserted as many as 12 relatively distinct claims.

The first claim in his Form Application is really two (2) distinct claims: (1) that he was denied the right to an effective appeal because he was not provided with a trial

transcript; and (2) that he was denied the right to effective assistance of counsel because of his counsel's failure to obtain the transcript.

In the second claim in the Form Application dealing with the severance issue he really makes six (6) distinct claims: (3) that the trial court's failure to sever subjected him to a death qualified jury; (4) that the trial court's failure to sever unfairly infringed upon his Sixth Amendment right to confrontation by subjecting him to evidence coming from certain co-defendants' improperly redacted confessions; (5) that the trial court's failure to sever subjected him to prejudicial testimony (concerning a separate robbery) given in response to questioning from the prosecutor; (6) that the trial court's failure to sever subjected him to prejudicial testimony (concerning a separate robbery) given in response to questions from a co-defendant's counsel; (7) that the trial court's failure to sever prejudiced him by having a police witness vouch for the testimony of a Commonwealth witness when cross-examined by a co-defendant's counsel; and (8) that the trial court's failure to sever prejudiced him by giving the prosecutor the opportunity to refer to the confessions of his co-defendants and to gesture to all defendants indicating that they were all (including Greene) implicated by the confessions.

The third claim presented in Petitioner's Form Application, (9) that the trial court erred in admitting evidence concerning a separate unrelated robbery, stands alone. The fourth claim presented is (10) that counsel who assisted Greene at both trial and on appeal was ineffective by failing to properly investigate and try the case, and (11) that separate PCRA counsel was ineffective in his representation of Petitioner in the PCRA process. Finally, in his fifth claim Greene asserts (12) that he was denied the right to appeal the PCRA court's denial of relief due to governmental interference.

We will treat these claims as essentially falling into three broad categories.  They are:

> (1)  claims that trial court actions violated petitioner's due process rights (claims 1, 9 and 12);
>
> (2)  claims related to the failure to sever (claims 3 through 8); and
>
> (3)  claims of ineffective assistance of counsel (claims 2, 10 and 11).

## II.  DISCUSSION

### A.  Cognizability of Claims

Habeas relief is only available for violations of the Constitution, laws or treaties of the United States.  28 U.S.C. § 2254(a).  For this reason, claims which are based upon state law are not cognizable.  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  Further, habeas review concerns only the proceedings that have resulted in the petitioner's conviction, and does not concern any state court collateral matters.  See Hassine v. Zimmerman, 160 F.3d 941, 954 (3d Cir. 1998). Thus, claims which are based upon problems with obtaining state collateral relief are not cognizable.  See id.  This includes any claims of ineffective assistance of counsel.  28 U.S.C. § 2254(i).

### B.  Exhaustion and Procedural Default

A habeas petitioner must exhaust state court remedies before obtaining habeas relief.  28 U.S.C. § 2254(b)(1)(A).  Traditionally, this meant that the petitioner had to show that his claim was fairly presented to the trial court, the Superior Court and the Supreme Court of Pennsylvania.  See Evans v. Court of Common Pleas, Delaware County, 959 F.2d

1227, 1230 (3d Cir. 1992).  However, in light of a May 9, 2000 order of the Supreme Court

of Pennsylvania, it is no longer necessary for Pennsylvania inmates to seek allowance of

appeal from the Supreme Court of Pennsylvania in order to exhaust state remedies.[4]  See

Lambert v. Blackwell, 387 F.3d 210, 233-34 (3d Cir. 2004).

A claim presented to the state courts which was not reviewed on the merits because

of a failure to comply with a state rule of procedure is considered procedurally defaulted.[5]

See Harris v. Reed, 489 U.S. 255, 262-63 (1989).  When such a claim is not later

addressed on the merits by a higher court, we must presume that the higher state court's

decision rests on the procedural default identified by the lower state court.  See Ylst v.

Nunnemaker, 501 U.S. 797, 803 (1991).  Finally, when a habeas petitioner has failed to

exhaust a claim and it is clear that the state courts would not consider it because of a state

procedural rule, the claim is also considered procedurally defaulted.[6]  See Coleman v.

Thompson, 501 U.S. 722, 735 n.1 (1991).

Procedurally defaulted claims cannot be reviewed unless the petitioner "can

demonstrate cause for the default and actual prejudice as a result of the alleged violation

---

[4]The Supreme Court's May 9, 2000 order states that Pennsylvania appellants need not seek allowance of appeal in order to exhaust state court remedies.  See Lambert v. Blackwell, 387 F.3d 210, 233 (3d Cir. 2004).  The Third Circuit has held that this order does not apply in cases where the time to seek allowance of appeal expired before May 9, 2000. See Wenger v. Frank, 266 F.3d 218, 226 (3d Cir. 2001).

[5]The habeas court can follow a procedural default relied upon by the state court even if, in an alternative holding, the state court addresses the merits of the claim.  See Harris v. Reed, 489 U.S. 255, 264 n.10 (1989).

[6]A common reason the state courts would decline to review a claim that has not been presented previously is the expiration of the statute of limitations for state collateral review.  See Keller v. Larkins, 251 F.3d 408, 415 (3d Cir. 2001).

of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. at 750.  In order to demonstrate cause, the petitioner must show that "some objective factor external to the defense impeded [the petitioner's] efforts to comply with the state's procedural rule." Id. at 753 (citation omitted).  Examples of cause include:  (1) a showing that the factual or legal basis for a claim was not reasonably available; (2) a showing that some interference by state officials made compliance with the state procedural rule impracticable; (3) attorney error that constitutes ineffective assistance of counsel. Id. at 753-54.

The fundamental miscarriage of justice exception is limited to cases of "actual innocence". Schlup v. Delo, 513 U.S. 298, 321-22 (1995).  In order to demonstrate that he is "actually innocent", the petitioner must present new, reliable evidence of his innocence that was not presented at trial.[7] Id. at 316-17, 324.  The court must consider the evidence of innocence presented along with all the evidence in the record, even that which was excluded or unavailable at trial. Id. at 327-28.  Once all this evidence is considered, the petitioner's defaulted claims can only be reviewed if the court is satisfied "that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Id. at 327.

---

[7]This evidence need not be directly related to the habeas claims the petitioner is presenting because the habeas claims themselves need not demonstrate that he is innocent. See Schlup, 513 U.S. at 315.

9

C.    **Standard for Issuance of the Writ**

The habeas statute as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that this court cannot grant habeas relief on a claim that has been adjudicated by a state court unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d)(1)-(2).  The habeas statute also provides that any findings of fact made by the state court must be presumed to be correct.  Petitioner will bear the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

A state court's adjudication of a claim is contrary to Supreme Court precedent if the state court has applied a rule that contradicts the governing law set forth in Supreme Court precedent or if the state court confronts a set of facts which are materially indistinguishable from a decision of the Supreme Court and the state court arrives at a different result from the Supreme Court.  Williams v. Taylor, 529 U.S. 362 at 405-06 (2000).  In determining whether a state court's decision was contrary to Supreme Court precedent, the habeas court must not be quick to attribute error.  See Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (per curiam).  Rather, state court decisions should be "given the benefit of the doubt."  Id.  In that regard, it is not necessary that the state court cite the governing Supreme Court precedent or even be aware of the governing Supreme Court precedent.

Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam).  All that is required is that there be no contradiction in the Supreme Court precedent with either "the reasoning [or] the result of the state-court decision."  Id.

If, however, the state court does correctly identify the governing United States Supreme Court precedent, unreasonable application analysis, rather than contrary analysis, is appropriate.  Id. at 406.  A state court decision constitutes an unreasonable application of Supreme Court precedent if the state court correctly identifies the governing legal rule but applies it unreasonably to the facts of the habeas petitioner's case.  Williams v. Taylor, 529 U.S. at 407-08.  In making the unreasonable application determination, the habeas court must ask whether the state court's application of Supreme Court precedent was objectively unreasonable.  Id. at 409.  The habeas court may not grant relief simply because it believes the state court's adjudication of the petitioner's claim was incorrect.  Id. at 411.  Rather, the habeas court must be convinced that the state court's adjudication of the claim was objectively unreasonable.  Id.  When deciding whether a state court's application of Supreme Court precedent was unreasonable, it is permissible to consider the decisions of lower federal courts which have applied Supreme Court precedent.  See Marshall v. Fredericks, 307 F.3d 36, 71 n.24 (3d Cir. 2002); Moore v. Morton, 255 F.3d 95, 104 n.8 (3d Cir. 2001).

With respect to 28 U.S.C. § 2254(d)(2) and 28 U.S.C. § 2254(e)(1), the Third Circuit has noted that both, "express the same fundamental principle of deference to state court [factual] findings." Lambert v. Blackwell, 387 F.3d 210, 235 (3d Cir. 2004).  The difference between the two provisions is that § 2254(d)(2) requires the habeas court to restrict its review of the state court's factual determination to the evidence that was presented to the

11

state court. Id.   In light of the evidence presented to the state court, the habeas court must determine whether the state court's adjudication of the claim was reasonable. Id. On the other hand, § 2254(e)(1) refers to "specific factual determinations made by the state court, and that are subsidiary to the ultimate decision." Id.   Those subsidiary factual determinations are subject to a presumption of correctness which the petitioner must rebut by clear and convincing evidence. Id.   The petitioner may rely upon evidence that was not presented to the state court in order to rebut the presumption. Id.   In the end however, even if the petitioner can rebut certain individual factual determinations under the §2254(e)(1) standard for the habeas court to grant relief under § 2254(d)(2), it must decide whether, in light of the state court's unrebutted factual determinations, that state court's adjudication of the claim was unreasonable. Id. at 236 n.19.

> **D.    Certificate of Appealability**

In order for Greene to be able to appeal the dismissal and denial of any of his claims, the court must grant him a certificate of appealability ("COA"). 28 U.S.C. § 2253(c). A COA can issue with respect to claims resolved on procedural grounds such as non-cognizability or procedural default if "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and [if] jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000).   In Slack, the Supreme Court went on to explain that:

> Where a plain procedural bar is present and the district court
> is correct to invoke it to dispose of the case, a reasonable jurist
> could not conclude either that the district court erred in
> dismissing the petition or that the petitioner should be allowed

> to proceed further.  In such a circumstance, no appeal would
> be warranted.

Id.  Further, the Supreme Court has held that, since the petitioner must make showings with respect to both the procedural issue and the underlying, constitutional issue, a court may resolve the COA question if either showing is lacking.  Id. at 484-85.

For claims resolved by application of the AEDPA standard of review contained at 28 U.S.C. § 2254(d)(1), a COA can only be granted if jurists of reason could find the court's application of the AEDPA standard of review to the claim was debatable.  See Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

For the reasons set forth below, we believe that Greene has failed to meet AEDPA's heavy burden with respect to all of his cognizable claims which are not procedurally defaulted.  At the same time, however, we conclude for the reasons discussed within that "jurists of reason" would find debatable a denial of the writ with respect to his Confrontation Clause claim.  Accordingly, as to that claim, and that claim alone, we **RECOMMEND** that a **CERTIFICATE OF APPEALABILITY** be **GRANTED**.

### E.    Due Process Claims

Three of Greene's claims -  those relating to his access to a complete trial transcript, the admission of evidence of an arguably connected robbery and his right to appeal his denial of his PCRA petition - appear to implicate his right to due process.  We discuss each claim on an issue-by-issue basis within.  We find that each of these claims which we discuss within are either not cognizable or procedurally defaulted.  We also find that Greene has not established the cause and prejudice or fundamental miscarriage of justice necessary to require that any of them be reviewed on the merits.

13

### 1.    Right to an Effective Appeal

Petitioner's first claim is that he was denied the right to an effective appeal because the trial court failed to provide him a complete trial transcript.  See Brief in Support pp. 11-19.  He raises this issue both with respect to his direct appeal and his PCRA proceedings.

In that habeas relief can only be granted with respect to the proceedings that have resulted in the petitioner's conviction, his complaint about not having received a complete trial transcript during PCRA proceedings is not cognizable.[8]  See Hassine v. Zimmerman, 160 F.3d 941, 954 (3d Cir. 1998).

A failure of the trial court to provide Petitioner a complete trial transcript on direct appeal, however, is cognizable in that he was indigent at the time and the state courts have a duty to provide indigent defendants with a copy of the trial transcript or an equivalent report of the events at trial such as to allow for pursuit of an adequate and effective direct appeal.[9]  See Draper v. Washington, 372 U.S. 487, 495-96 (1963); Griffin v. Illinois, 351 U.S. 12, 16 (1956).

This claim was raised on direct appeal and was adjudicated by the Superior Court. There, Petitioner argued that he had not been provided the transcript of the testimony of

_____

[8]We believe that "jurists of reason" would not debate this conclusion.  Accordingly, we recommend that a Certificate of Appealability not be granted.

[9]The state need not produce the entire trial transcript if the claims the defendant intends to raise on appeal only concern some portions of the trial.  See Draper v. Washington, 373 U.S. 487, 495 (1963).  On direct appeal, Petitioner argued that his claim of insufficiency of the evidence could not be addressed without the missing testimony of Jackson.  See Petitioner's Direct Appeal Brief at 12, 16-18.  This is sufficient to implicate the state's duty to provide Petitioner with the transcript of Jackson's testimony.  See Draper, 373 U.S. at 497.

14

Demond Jackson, the only witness who identified him as a participant in the crime.[10]  See Commonwealth v. Trice, No. 01829 Philadelphia 1996, slip op. at 4 (Pa. Super. Dec. 16, 1997).  The Superior Court determined, however, that Greene had waived this claim because he had failed to avail himself of Pennsylvania Rule of Appellate Procedure 1923 ("Rule 1923").  Id. at 4-5.  The rule provides that, when a transcript is unavailable, an appellant may prepare a statement of the evidence from the best available means, including his own recollection.  Id.  Because the Superior Court found that Petitioner had waived his claim by failing to comply with the rule, it had been procedurally defaulted.[11]

Greene has made no effort to demonstrate cause and prejudice to excuse the default of this cognizable claim.  He has, however, asserted his innocence. See Petitioner's September 30, 2005 Response at [6], [7].[12]  Yet, the actual innocence standard established by Schlup v. Delo, supra, is not satisfied by simple assertions of innocence.  Instead, to avail himself of the fundamental miscarriage of justice exception for procedural default, Greene must provide new, reliable evidence of his innocence that

---

[10]We note that the District Attorney has provided us with the complete trial transcript, including the testimony of Demond Jackson which started on February 29, 1996 and continued on March 4, 1996.

[11]A procedural default must be adequate and independent of federal law in order to bar habeas review.  See Harris v. Reed, 489 U.S. 255, 260 (1989).  One might argue that Rule 1923 is not truly independent of federal law because the procedure it requires is designed to afford an appellant the ability to obtain an adequate factual record to challenge his conviction, which is precisely the right an indigent appellant has under the Fourteenth Amendment.  See Draper, 372 U.S. at 495-96.  However, Greene has not raised the issue and, indeed, the parties have not briefed the questions of adequacy and independence. We decline to address them sua sponte.

[12]Greene did not number the pages of his September 30, 2005 response.  His assertions of innocence are found on the sixth and seventh pages of his response.

was not presented at his trial.  See Schlup v. Delo, 513 U.S. at 316-17, 324.  This Greene

has utterly failed to do.  Accordingly, his cognizable claim is procedurally defaulted.[13]

### 2.   Testimony about the Ace Check Cashing Robbery

Petitioner's ninth claim is that it was error for the trial judge to have admitted any

testimony concerning the Ace Check Cashing robbery.  See Brief in Support pp. 48-50.

Greene argues that the decision to admit this evidence was an error of state evidentiary

law.[14]  As the claim is based upon state law, it is not cognizable.[15]  See Estelle v. McGuire,

502 U.S. at 67-68.[16]

### 3.   Governmental Interference with PCRA Appeal

Petitioner's twelfth claim is that is that he was denied the right to appeal the PCRA

court's denial of PCRA relief as a result of governmental interference.  See Brief in Support

---

[13]We believe that "jurists of reason" would not debate our conclusion that Greene's claim is procedurally defaulted and cannot be reviewed on its merits.  Accordingly, a COA should not be granted for the claim.

[14]On direct appeal, the Superior Court concluded that the trial court had not abused its discretion in deciding to admit evidence concerning the Ace Check Cashing robbery. See Commonwealth v. Trice, No. 01829 Philadelphia 1996, slip op. at 11-12 (Pa. Super. Dec 16, 1997).

[15]In the last paragraph of this section of his brief, Greene does state that the trial judge's decision to admit some evidence concerning the Ace Check Cashing robbery denied him the constitutional right to a fair trial.  One might argue that, by doing so, he is attempting to invoke the Due Process Clause as a basis for relief.  However, Petitioner cites no cases which rely upon the Due Process Clause and, except for one, brief mention of his constitutional right to a fair trial, the rest of this section of his brief is devoted to explaining why, under state law, the trial judge erred in admitting any evidence concerning the Ace Check Cashing robbery.  Under these circumstances, we find that Greene has failed to raise a cognizable claim.

[16]We believe that "jurists of reason" would not debate this conclusion.  Accordingly, a COA should not be granted for the claim.

16

pp. 56-60.  He complains that the state court officials failed to provide him with transcripts of trial proceedings which he contends were needed in order to effectively appeal the PCRA court's denial of PCRA relief to the Superior Court.  As this relates directly to state court collateral proceedings, it is not cognizable.[17]  See Hassine v. Zimmerman, 160 F.3d at 954.

###### F.  **Severance-Related Claims**

Greene raises six claims which are related to the alleged trial court error of failing to sever his trial from the trial of his co-defendant Julius Jenkins.  He argues that this failure subjected him to a death qualified jury, infringed upon his Sixth Amendment Confrontation Clause rights, subjected him to prejudicial testimony concerning another, unrelated offense, allowed police testimony vouching for a commonwealth witness, and gave the prosecutor the opportunity to refer to him by gesture and in general statements when referring to the confessions of co-defendants in closing argument.

We discuss each severance-related claim within.  We find one claim is not cognizable and another is procedurally defaulted.  The others are reviewed on their merits.  Given the current state of habeas jurisprudence, we conclude that they all lack merit.[18]

### 1.  **The Death Qualified Jury**

Petitioner's third claim is that is that his trial should have been severed at least from co-defendant, Julius Jenkins, in that he (Jenkins) was subject to the death penalty and

---

[17]We believe "jurists of reason" would not debate this conclusion.  Accordingly, a COA should not be granted for the claim.

[18]As will be explained, we will recommend that a certificate of appealability be granted with respect to Greene's claim concerning the redactions in the confessions of Finney and Womack.

Petitioner was not.  See Brief in Support pp. 20-23.  Petitioner notes that this circumstance denied him a jury of his peers because it allowed 23 potential jurors who were opposed to the death penalty to be excused from service.

This claim was adjudicated by the Superior Court on direct appeal.  That court concluded that the claim lacked merit because the United States Supreme Court and the Pennsylvania Supreme Court had upheld the constitutionality of death qualified juries even for co-defendants where the death penalty was not being sought.  Commonwealth v. Trice, No. 01829 Philadelphia 1996, slip op. at 7 (Pa. Super. Dec. 16, 1997) (citing, inter alia, Lockhart v. McCree, 476 U.S. 162 (1986)).

In Buchanan v. Kentucky, 483 U.S. 402 (1987), the Supreme Court was faced with a claim virtually identical to that raised by Petitioner.  David Buchanan was not subject to the death penalty but his co-defendant was.  Buchanan, 483 U.S. at 404, 408. Unfortunately for Buchanan (and Greene here), the Supreme Court concluded that he could not demonstrate that being tried by a death qualified jury violated either his right to a jury selected from a fair cross section of the community nor his right to an impartial jury.  Id. at 415-20.  The Court repeatedly cited its decision in Lockhart v. McCree, 476 U.S. 162 (1986), as support for its conclusions.[19]

The Superior Court's adjudication of Greene's claim is entirely consistent with the Supreme Court's decision in Buchanan.  Indeed, like the United States Supreme Court, the Pennsylvania Superior Court relied upon Lockhart v. McCree as support for its decision.

---

[19]In Lockhart v. McCree, the Court held that death qualification of the jury for a defendant subject to the death penalty did not violate the defendant's right to a jury selected from a fair cross-section of the community nor the defendant's right to an impartial jury.  See Lockhart v. McCree, 476 U.S. 162, 173-84 (1986).

18

Since the Superior Court's adjudication is entirely consistent with <u>Buchanan</u>, it cannot be said to be contrary to nor an unreasonable application of Supreme Court precedent.  Thus, 28 U.S.C. § 2254(d)(1) provides no basis to afford Petitioner  habeas relief. Similarly, 28 U.S.C. § 2254(d)(2) provides Petitioner no relief as he does not challenge the Superior Court's adjudication of his claim as being unreasonable in light of the facts presented to the Superior Court.[20]

> **2.     Redaction of the Confessions of Co-Defendants Finney and Womack**

Greene's fourth claim is that the confessions of his two co-defendants, Atil Finney and Gregory Womack, were improperly redacted.  <u>See</u> Brief in Support pp. 23-29.  Greene argues that the redactions were insufficient to protect his Confrontation Clause rights under the line of cases which follow <u>Bruton v. United States</u>, 391 U.S. 123 (1968).

At trial, Detective Michael Gross read the redacted confession he had taken from co-defendant Finney.  Gross's testimony was based on questions the detective had posed to Finney and Finney's responses:

> We were riding around in this, this guy's car, me and three other guys were in North Philadelphia.  We – when one said let's get paid.  Everyone said okay and we saw this store.  So me and two guys went in the store.  When we got inside two guys stayed up front and I stayed to the back.  One guy had his gun on the guy and was at the cash register.  Getting the money.  But it wouldn't.  I heard a shot and I looked over.  Blood was coming out of the guy's mouth.  After that someone grabbed the register and we all ran out.

---

[20]We believe "jurists of reason" would not debate our application of the AEDPA standard of review to this claim.  Accordingly, a COA should not be granted for the claim.

(N.T. 3/5/96 at 117-18).[21]  Gross then testified about Finney's description of leaving the scene of the crime:

> We ran to the car and went back up Germantown.  We went to someone's house.  It's an apartment.  And two guys got screwdrivers and opened up the register.

Id. at 118.  According to Gross, Finney then explained that $65 was in the cash register and that it was split up evenly between all the participants.  Id.  Gross testified that he asked Finney if he knew any of the defendants by name.  Finney told him that, "one is and the other is.  I only know two of them by their nicknames."  Id.  Gross told the jury that he showed some photographs and Finney identified three of them as follows:  "Number three is.  Number six is.  Number eight is."  Id. at 119.  He was also asked if he knew "a guy named blank?"  Id.  Finney responded that he did and he identified a photograph of "blank." Id.  Gross then testified that he also asked Finney who shot the owner of the store and he responded, "Someone."  Id. at 120.  During Detective Gross's reading of the redacted confession, the trial court instructed the jury that a rule of evidence provides that the confession of a defendant to certain criminal actions can be used by the jury only against the defendant who made the confession and not against any other defendant.  Id. at 125. The jurors were instructed that they could not use the confession in any way against any other defendant.  Id.

At trial, Detective Joseph Walsh read the redacted confession he had taken from co-defendant Womack.  The redacted confession was based on questions Detective Walsh posed to co-defendant Womack and Womack's responses:

---

[21]The state court has not provided us with the state court record.  However, the District Attorney has provided us with a copy of the complete trial transcript.

QUESTION:  Did you know the deceased, Francisco Azcona?

ANSWER:  No.

QUESTION:  Do you know who shot and killed Francisco Azcona?

ANSWER:  Yes.

QUESTION:  What is his last name and where does he live?

ANSWER:  His name is blank.  He used to live on top of the bar.

QUESTION:  How long have you known him?

ANSWER:  About three or four years.

QUESTION:  Where were you when he shot and killed Francisco Azcona?

ANSWER:  In my car, the station wagon.

QUESTION:  I want you to go on in your own words and tell me what you know about the murder of Francisco Azcona, that occurred on December the 11th, 1993.

ANSWER:  It was me and another guy.  We were in the car, the other three went in the store.  The car was around the corner and then they came out of the store carrying a cash register.  As we pulled off the shooter said he shot the guy.  I think someone asked him why did he shoot the guy?  He didn't answer him.  Then we drove up our neighborhood.  Then we drove to someone's and we opened the register and got the money and we took the register and dumped it in a trash dumpster in a townhouse.

QUESTION:  Do you know someone's real name and where he lives?

ANSWER:  I don't know his real name.  He lives somewhere in blank.

QUESTION:  Do you know someone else's real name and where he lives?

ANSWER:  We call him blank.  I don't know where he lives.  Somewhere up dog [sic] town.

QUESTION:  What is someone else's real name and where does he live?

ANSWER:  I don't know his real name --"

(N.T. 3/6/96 at 38-39).   After a sidebar, Detective Walsh completed co-defendant

Womack's answer as follows:  "I don't know his real name, but when we were locked up

he used blank."  Id. at 41-42.   In the remainder of the confession as read by Walsh,

21

Womack explained that he had known one of the participants for 10 years and had met another just before the robbery.  Id. at 42.  Womack also stated he was not sure if anyone other than the shooter was armed, id. at 42, that the gun the shooter had was a .45 revolver, id. at 43, that the money was split among all the participants, id. at 43-44, and that he drove the getaway car.  Id. at 44.

At the time Detective Walsh read Womack's redacted confession to the jury, the trial court did not provide any limiting instructions as it had when Finney's redacted confession was read.  However, when the court delivered its final instructions to the jury, it explicitly told them that they could only use the confessions of co-defendants Finney and Womack against the defendant who had made the confession and that they could not be used as evidence against any other defendant.  (N.T. 3/11/96 at 16).

Petitioner's claim was adjudicated by the Superior Court on direct appeal.  That court, in its December 16, 1997 opinion, noted that the statements of Finney and Womack had been redacted to remove any reference to the other defendants by name and to replace certain references by pronouns such as "we" and "they."  Commonwealth v. Trice, No. 01829 Philadelphia 1996, slip op. at 8-9 (Pa. Super. Dec. 16, 1997).  The Superior Court also noted that the trial court had given proper limiting instructions and that Petitioner was not unduly prejudiced by the redacted statements.  Id. at 9.  For all these reasons and because of the preference for joint trials of co-conspirators, the Superior Court concluded that Petitioner's Confrontation Clause rights were not violated.  Id.

As we set out in our procedural history (p.2 infra), the decision of the Pennsylvania courts did not become final until July 29, 1999 largely because of the determination that allocator to the Pennsylvania Supreme Court had been improvidently granted.  As we

22

discuss within, the difference between these two dates is significant because of the Supreme Court's March 9, 1998 decision in Gray v. Maryland, 523 U.S. 185 (1998).

In consideration of the standard of review mandated by 28 U.S.C. § 2254(d) and recognizing the timing and potential significance of Gray, we must decide whether the, "clearly established Federal law, as determined by the Supreme Court of the United States," is to be considered as of the date the Superior Court adjudicated Petitioner's claim (December 16, 1997) or on the date Petitioner's conviction became final on direct appeal (July 29, 1999).

a.     **Timing of Clearly Established Law**

If the applicable date to consider the state court determination of federal law is the date the judgment became final (July 29, 1999), we would have to take into account the Supreme Court's Gray decision.  In that Confrontation Clause case, which came down in March 1998, the Supreme Court clarified the law by making it clear that the simple redaction of the name of a non-confessing co-defendant with obvious indications of deletions, may not be enough to provide the Confrontation Clause protection mandated by our law.  If the earlier date (December 16, 1997) is used, Gray will not have to be considered a part of the relevant precedent.  For the reasons which follow, we conclude that the state of United States Supreme Court precedent must be considered as of the earlier date, which means we will evaluate the matter without the benefit of the Gray decision.[22]

---

[22]We must apply the AEDPA standard of review to the Superior Court's adjudication of the claim because that is the highest substantive state court decision addressing the claim.  Fountain v. Kyler, 420 F.3d 267, 273-74 (3d Cir. 2005).

23

The Third Circuit's decision in Priester v. Vaughn, 382 F.3d 394 (3d Cir. 2004), is instructive.  Priester was convicted in 1992.  His conviction did not become final however until January 1, 1994 after the Pennsylvania Supreme Court's denial of his petition for allocator and he chose not to seek certiorari in the United States Supreme Court.  At issue was the Commonwealth's use of his co-defendant's redacted confession where reference to Priester was deleted in favor of phrases like "the other guy."[23]  Making specific reference to Gray, the Third Circuit concluded that Priester could not show that the Superior Court acted unreasonably by failing to consider Gray in that it was decided several years after the Superior Court's adjudication of Priester's claim.[24]

While the Third Circuit appears to suggest that Supreme Court precedent should be evaluated as of the date of the Superior Court's adjudication, the court was not required to consider the alternative finality date in that there was no relevant precedent to consider between the time of the Superior Court's adjudication of the claim (November 18, 1992) and the time that Priester's conviction became final (January 1, 1994).

The Supreme Court has also addressed this timing issue, although not in cases involving redacted confessions.  Williams v. Taylor, 529 U.S. 362 (2000), is a habeas case

---

[23]Priester was tried along with Nathaniel Butler on charges that they had participated in a fatal shooting.  Priester, 382 F.3d at 396.  At the time of the shooting, Tracey Postell was in the car with Priester and Butler.  Postell and Butler had confessed to police after the crime.  Postell had agreed to plead guilty and testify against Priester and Butler at their joint trial.  Priester, 382 F.3d at 396.  At trial, Postell attempted to recant the confession he had given to police by stating he had lied and had not witnessed the crime because he was asleep in the car at the time of the shooting.  Id.  As a result of Postell's refusal to testify in a manner consistent with his confession, the trial court allowed the prosecution to use the redacted confession of Butler.  Id.

[24]In the alternative, the Third Circuit also explained why Priester could not prevail even if Gray was considered.  Priester, 382 F.3d at 400.

where the principal issue concerned the effectiveness of counsel at the penalty phrase of a capital case.  Justice Stevens writing for the majority of the Court on Parts I, III and IV of the opinion set out the specific issue relevant to us in Part III:

> In this case, Williams contends that he was denied his constitutionally guaranteed right to the effective assistance of counsel when his trial lawyers failed to investigate and to present substantial mitigating evidence to the sentencing jury. The threshold question under AEDPA is whether Williams seeks to apply a rule of law that was clearly established **at the time his state-court conviction became final**.

529 U.S. at 390 (emphasis added).  This approach is consistent with the earlier portion of Justice Steven's opinion which argues that, in 28 U.S.C. § 2254(d)(1), Congress sought to codify the Supreme Court's non-retroactivity rules from the line of cases following Teague v. Lane, 489 U.S. 288 (1989).[25]  See Williams v. Taylor, 529 U.S. at 379-82 (Stevens, J., concurring).

However, the portion of Justice Stevens's opinion which provides this reasoning (Part II) did not garner a majority of the Supreme Court.  Instead, a majority of the Court followed the opinion of Justice O'Connor and took the position that 28 U.S.C. § 2254(d)(1) had "only a slight connection to our Teague jurisprudence."  Williams v. Taylor, 529 U.S. at 412.  In the portion of Justice O"Connor's opinion that spoke for the majority of the Supreme Court, she wrote.

---

[25]Teague v. Lane establishes the principle that, absent certain narrow exceptions, new constitutional rules of criminal procedure that are decided after a defendant's conviction becomes final on direct appeal will not be applied retroactively to the defendant if he seeks collateral review of his conviction.  Teague, 489 U.S. at 310 (plurality opinion). This non-retroactivity principle was adopted by a majority of the court in Penry v. Lynaugh, 492 U.S. 302, 313 (1989).

> Throughout this discussion the meaning of the phrase "clearly established Federal law, as determined by the Supreme Court of the United States" has been put to the side.  That statutory phrase refers to the holdings, as opposed to the dicta, of this Court's decisions **as of the time of the relevant state-court decision**.

Id. (emphasis added).  In spite of taking a position which is inconsistent with Teague[26], Justice O'Connor went on to write for the Court that Teague jurisprudence concerning what constituted an old rule would control what was the clearly established law for purposes of 28 U.S.C. § 2254(d)(1).  Williams v. Taylor, 529 U.S. at 412.  The only caveat was that Supreme Court precedent could be the only source of the clearly established law.  Id.

In spite of this initial lack of clarity, the Supreme Court in subsequent cases has consistently noted that, for purposes of applying 28 U.S.C. § 2254(d)(1), Supreme Court precedent must be evaluated as of the date the relevant state court adjudicated the petitioner's claim.  See Yarborough v. Alvarado, 541 U.S. 652, 124 S.Ct. 2140, 2147 (2004); Wiggins v. Smith, 539 U.S. 510, 520 (2003); Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003).  In light of this consistent, more recent precedent and in light of Priester v. Vaughn, we conclude, for purposes of applying 28 U.S.C. § 2254(d)(1), that the state of Supreme Court precedent must be evaluated as of the date Greene's claim was adjudicated by the Superior Court.[27]  Thus, we will not in our evaluation of this issue

---

[26]Teague and its progeny establish that the habeas court must determine what law was clearly established at the time the petitioner's conviction became final on direct appeal.  See e.g., Caspari v. Bohlen, 510 U.S. 383, 390 (1994).

[27]Putting aside Priester v. Vaughn, recent Third Circuit precedent concerning this timing issue has also been inconsistent.  In a case decided in October 2004, the Third Circuit took the position that the state of Supreme Court precedent must be evaluated as of the date of the state court decision under review.  See Gibbs v. Frank, 387 F.3d 268, 272 (3d Cir. 2004) (citing Williams v. Taylor, 529 U.S. at 412; Lockyer v. Andrade, 538 U.S.

consider <u>Gray v. Maryland</u> as being part of the clearly established Supreme Court precedent that must be applied.

### b.    <u>Application of the AEDPA Standard of Review</u>

Consideration of Petitioner's Confrontation Clause claim must begin with <u>Bruton v. United States</u>, 391 U.S. 123 (1968).  In <u>Bruton</u>, George William Bruton was tried on a charge of armed postal robbery along with "one Evans."  <u>Bruton</u>, 391 U.S. at 124.  Prior to trial, Evans had made a statement to police in which he admitted that he and Bruton had committed the crime.  <u>Id.</u>  At trial, this confession was read to the jury but the trial judge instructed the jury that the it was to be considered against Evans only could not be used in any way against Bruton.  <u>Id.</u> at 125.  The Supreme Court concluded that the limiting instruction given by the trial judge was insufficient to prevent the risk that the jury would nonetheless consider Evans's confession as evidence against Bruton.  In the view of the Court, the inability of Bruton to cross-examine Evans was deemed a violation of his Sixth Amendment right of confrontation.  <u>Id.</u> at 126, 137.

The Supreme Court next addressed this Confrontation Clause issue in the context of a co-defendant's statement in <u>Richardson v. Marsh</u>, 481 U.S. 200 (1987).  There,

---

at 71-72).  In <u>Gibbs</u>, the Third Circuit relied upon the portion of Justice O'Connor's opinion that garnered a majority of the Court in <u>Williams v. Taylor</u> and on <u>Lockyer v. Andrade</u>. However, in a case decided one month before <u>Gibbs v. Frank</u>, the Third Circuit took the position that the state of Supreme Court precedent should be evaluated as of the date the Petitioner's conviction became final.  <u>See</u> <u>Fischetti v. Johnson</u>, 384 F.3d 140, 148 (3d Cir. 2004) (citing <u>Marshall v. Hendricks</u>, 307 F.3d 36, 62 (3d Cir. 2002), <u>Moore v. Morton</u> 255 F.3d 95, 104-05 & n.8 (3d Cir. 2001)).  Further, in case decided in March 2004, the Third Circuit again took a similar position without citing <u>Marshall</u> or <u>Moore</u>.  <u>See</u> <u>Lewis v. Johnson</u>, 359 F.3d 646, 652-53 (3d Cir. 2004) (citing <u>Williams v. Taylor</u>, 529 U.S. at 390). Instead, the Third Circuit relied upon the portion of Justice Stevens's opinion that garnered a majority of the Court in <u>Williams v. Taylor</u>.

Clarissa Marsh, Benjamin Williams and Kareem Martin were charged with assaulting Cynthia Knighton and murdering her four year old son, Koran, and her aunt, Ollie Scott. Id. at 202.  Marsh was tried together with Williams only because Martin was a fugitive at the time of trial.  Id.  Knighton testified about Marsh's participation in the charged offenses. Id.  As in Bruton, the confession of Williams, who did not testify, was read to the  jury in redacted form.  Id. at 203.  All references to Marsh were eliminated.  Indeed, as redacted the confession indicated that only Williams and Martin participated in the charged offenses. Id. & n.1.  Further, the jury was admonished not to consider Williams's confession in any way against Marsh.  Id. at 204.

Unlike Bruton, however, Marsh did testify at trial.  Id.  She corroborated some of the details in Williams's confession and in Knighton's testimony.  Id.  She also testified, however, that she had no prior knowledge that Williams and Martin were armed, that she had not heard any conversation between them about anyone being harmed and that she certainly had not intended to rob or kill anyone.  Id.

As a fundamental proposition, the Court articulated the principle that a witness whose testimony is introduced at trial is not considered to be a witness against the defendant (and hence not subject to the Confrontation Clause) if the jury is instructed to consider the testimony only against a co-defendant.  Id. at 206.  The Court noted that this rule is based upon the long held presumption that jurors follow the instructions they are given.  Id. at 206-07 (collecting cases).  The Court then characterized Bruton, where the confession of a non-testifying co-defendant incriminated the defendant on its face to be a narrow exception to this presumption.  Id. at 207.  The court accepted that in that limited

circumstance the trial court's cautionary instruction would not protect the defendant's Confrontation Clause rights.  Id.

In Marsh however, Williams's redacted confession did not incriminate Marsh on its face. Indeed, it did not even mention Marsh.  Id. at 208, 211.  Only when linked to other evidence admitted at trial and, in particular, Marsh's own testimony could it be said to be incriminating.  Id.  The Court concluded that, in these circumstances, a limiting instruction would be sufficient to protect Marsh's Confrontation Clause rights.  Id. at 208-11.  The Court also expressed its view that, if a co-defendant's confession facially incriminates the defendant, the Confrontation Clause rights of the defendant can be protected by redaction. Id. at 209.

Marsh was the last, relevant case in the Bruton line which the Supreme Court decided before the Superior Court adjudicated Greene's claim.[28]  We are compelled to conclude, based upon Bruton and Marsh, that a co-defendant's confession which does not,

_____

[28]Greene also argues that Cruz v. New York, 481 U.S. 186 (1987) is relevant precedent.  See Petitioner's Brief in Support at 27.  We disagree.

       Cruz involved the admission of a co-defendant's unredacted confession which facially incriminated defendant Eulogio Cruz.  Cruz, 481 U.S. at 188-89.  The trial court instructed the jury that the co-defendant's confession was not to be used against Cruz.  Id. at 189.  The unredacted confession was admitted on the ground that it "interlocked" with Cruz's own confession, as related by a witness who allegedly heard Cruz's confession. Id. at 188-89. The Supreme Court held that the interlocking natures of the two confessions did not create an exception to Bruton which would allow admission of the co-defendant's confession so long as a limiting instruction was given.  Id. at 193.  Indeed, Cruz was decided to resolve the question of whether the interlocking nature of a co-defendant's confession with the defendant's confession was an exception to Bruton.  Id. at 188.

       This case does not involve a confession of Greene that interlocks with the confessions of his co-defendants. Indeed, Petitioner did not confess in this case.  Further, as explained in the body of this opinion, the confessions of co-defendants Finney and Womack do not facially incriminate Petitioner.  For these reasons, Cruz does not provide assistance in resolving the merits of Greene's claim.

on its face, incriminate the non-confessing defendant combined with a limiting instruction telling the jury that they may use the confession only against the confessor will protect the Confrontation Clause rights of the non-confessing defendant.  The question thus becomes, was it reasonable for the Superior Court to conclude that the trial court's limiting instructions protected Greene's Confrontation Clause rights.  The resolution of this claim turns on whether the redacted confessions of Finney and Womack facially incriminated Petitioner.[29]

We note that neither confession incriminates Greene directly in that he is not referred to by name.  To this extent, the redacted confessions are similar to the confession in Marsh.  At the same time, they differ from those in Marsh as they mention several, unnamed participants and thus do not remove all implications of incriminating Petitioner.  When combined with the other evidence in the case which described how many participants were involved and which corroborated and expanded upon some of the details in the redacted confessions, they arguably incriminate Greene.  The question then is whether the limiting instructions given by the trial judge informing the jurors that they could use the confession of co-defendant Finney only against Finney and that they could use the confession of co-defendant Womack only against Womack provided legally sufficient protection against any possible violation of the Confrontation Clause.

We conclude that the confessions in this case fall between the facially incriminating confession in Bruton and the confession in Marsh.  Marsh holds that, except for facially

---

[29]If Gray were considered part of the clearly established precedent, the relevant inquiry would be different.  Instead, we would have to consider whether the confessions were redacted in a manner which made it obvious that the declarants had identified other defendants.  See Gray 523 U.S. at 192.

incriminating confessions like the one in <u>Bruton</u>, the reviewing court may presume that jurors will follow limiting instructions. <u>See Marsh</u>, 481 U.S. at 206-08. While the Superior Court opinion makes no reference to <u>Marsh</u>, it clearly accepted this principle when it adjudicated Petitioner's claim. For this reason, we conclude that neither the reasoning the Superior Court employed nor the result the Superior Court reached contradicted United States Supreme Court precedent. Thus, under the AEDPA standard of review, Petitioner cannot obtain habeas relief under 28 U.S.C. § 2254(d)(1).[30] Further, 28 U.S.C. § 2254(d)(2) also provides no basis for habeas relief in that Petitioner does not challenge the Superior Court's adjudication of his claim as being unreasonable in light of the facts presented to the Superior Court.

**c.** **Certificate of Appealabiity**

Our application of the AEDPA standard of review to Greene's Confrontation Clause claim is premised on the conclusion that we have to determine what law was clearly established by Supreme Court precedent as of the date the Superior Court adjudicated Greene's claim. This meant that we would not consider the Supreme Court's decision in <u>Gray</u>, which was decided shortly after the Superior Court's adjudication. However, we must concede that there is no binding precedent which has squarely decided that a habeas court must only consider Supreme Court precedent decided by the time the relevant state

---

[30]We would not want our conclusions concerning this Confrontation Clause issue to be construed by the District Attorney as a statement of our approval of the manner in which these redactions were utilized. In that the Finney and Womack confessions are relevant only as to the prosecutor's case against them, we are puzzled as to why it was deemed necessary to offer evidence reflecting the fact that the confessing defendants knew the names of certain co-defendants when those names were not and could not be provided. <u>See Bruton</u>, 391 U.S. at 127.

31

court adjudicated the Petitioner's claim and may not consider Supreme Court precedent decided after the state court's adjudication but before the Petitioner's conviction became final.  Further, given the inconsistencies in <u>Williams v. Taylor</u> concerning the date to be used when applying 28 U.S.C. § 2254(d)(1) and given the inconsistencies in Third Circuit precedent on this issue, reasonable jurists might conclude differently.  Indeed, in spite of <u>Priester</u>, two different panels of the Third Circuit have recently concluded that the date to be used is the date a conviction becomes final.  <u>See</u> <u>Fischetti v. Johnson</u>, 384 U.S. at 148; <u>Lewis v. Johnson</u>, 359 U.S. at 646, 652-53 (3d Cir. 2004).  Thus, on this question, we believe and therefore **RECOMMEND** that a COA issue.

In addition, if it is ultimately determined that we have erred and the date to be used when applying 28 U.S.C. § 2254(d)(1) should be the date Greene's conviction became final, <u>Gray</u> would be considered as applicable precedent.  As will be seen, if <u>Gray</u> is considered to be part of the applicable precedent, Petitioner's Confrontation Clause claim must be considered to have greater merit.  Thus, the court finds that a COA should issue with respect to this claim.  <u>See</u> <u>Miller-El v. Cockrell</u>, 537 U.S. at 337-38 (noting that, for a COA to issue, the habeas petitioner must show that his claim is more than frivolous although he need not demonstrate that he will prevail).

In <u>Gray</u>, Stacey Williams died after a severe beating.  <u>Gray</u>, 523 U.S. at 188. Anthony Bell, Gray's co-defendant, gave a confession in which he admitted to participating in the beating along with Gray and Jacquin Vanlandingham.  <u>Id.</u>  Vanlandingham died and only Bell and Gray were indicted for the crime.  <u>Id.</u>  At trial, Bell's confession was redacted by leaving blank spaces where Bell had identified Gray and Vanlandingham.  <u>Id.</u> at 198-200.  When Bell's confession was read at trial, the police detective who read it inserted the

32

words "deleted" or "deletion" whenever Gray or Vanlandingham's names appeared. <u>Id.</u> at 188. Bell did not testify at trial. <u>Id.</u> at 189. The trial judge instructed the jury by telling them that the confession was evidence against Bell only and could not be used against Gray. <u>Id.</u> at 189.

The question presented in <u>Gray</u> was how the rule of <u>Bruton</u> should be applied when the confession of a non-testifying co-defendant is redacted to replace the defendant's name with an obvious blank space or a symbol or word such as "deleted." <u>Id.</u>  The Court decided that such redactions, "so closely resemble <u>Bruton</u>'s unredacted statements that, in our view, the law must require the same result." <u>Id.</u> at 192. That is, limiting instructions will not protect a defendant's Confrontation Clause rights when such redactions are used. <u>Id.</u> at 192, 195.

In co-defendant Finney's confession, he referred to the person who took the cash register as "someone." (N.T. 3/5/96 at 118). Finney was also asked to name the persons who had participated with him in the robbery. <u>Id.</u> He answered, "One is and the other is." <u>Id.</u> Further, he was asked to identify photographs and he said, "Number three is. Number six is. Number eight is." <u>Id.</u> at 119. In addition, he was asked if he knew, "a guy named blank?" <u>Id.</u> Finney responded that he did and identified a photograph of "blank." <u>Id.</u>

It appears clear that the jury, upon hearing Detective Gross's testimony about the Finney confession would conclude that the names of other defendants had been redacted from the confession. Of particular concern here is that the jury may have concluded that one of the names removed would have been that of Greene. This concern is heightened given the earlier testimony of Commonwealth witness Demond Jackson that Greene was the defendant who actually carried the cash register to the car coupled with Finney's

33

reference (as testified by Gross) to "someone" carrying the cash register to the getaway car.[31]  (N.T. 2/29/96 at 59.)

In any event, the redacted confession Detective Gross read bears real similarity to the redacted confession that was read in Gray.  As such, we conclude that, if Gray applies to Petitioner's Confrontation Clause claim, reasonable jurists could find that his claim has merit.  This is sufficient to warrant granting a COA.  See Miller-El v. Cockrell, 537 U.S. at 337-38.

In co-defendant Womack's confession, he identified the person who killed the victim as "blank."  (N.T. 3/6/96 at 38).  He was asked to name each of the other three co-defendants.  Id. at 39.  Each time Womack did so, Detective Walsh referred to the co-defendant he was asking about as "someone else."  Id. at 39.  Womack was also asked if he knew the real names of the three co-defendants other then the killer.  Id. at 39, 41-42.  In one case, Womack did not know the real name.  Id. at 39.  In the other two cases, Womack did provide the names, which Detective Walsh read as "blank" to the jury.  Id. at 39, 41-42.

As with Detective Gross's reading of the Finney confession, it seems clear that the jury would have concluded that the names of other defendants were redacted from the confession.  Unlike the Finney confession however there was nothing said about any conspirator carrying the cash register to the getaway car. Nonetheless, the redacted

---

[31]We note that the trial judge concluded Petitioner was the one who took the cash register out of the store after the robbery.  See Commonwealth v. Trice, No. 95-06-0118, slip op. at 2 (Phila. Co. Mar. 10, 1997).  If the jurors believed Demond Jackson's testimony on this point and they reached the same conclusion as did the trial judge, then there is a greater risk that the jurors would find that co-defendant Finney named Petitioner in his confession when he stated that "someone" took the cash register out of the store.

confession Detective Walsh read is very similar to the redacted confession that was read in Gray.  As such and coupled with the Jackson testimony and the Finney statement, we conclude as we did with respect to the Finney confession that, if Gray applies to Petitioner's Confrontation Clause claim, reasonable jurists could find that his claim has merit.  This is sufficient to warrant granting a COA.  See Miller-El v. Cockrell, 537 U.S. at 337-38.

### 3.    Officer McKeever's Testimony Concerning Another Robbery

#### a.    On Cross-Examination

Greene's fifth claim is that, while being cross-examined by a co-defendant's counsel, Officer Mitchell McKeever provided improper and prejudicial testimony concerning the Ace Check Cashing robbery.  See Brief in Support pp. 30-35.  Petitioner relies upon Pennsylvania evidentiary law to challenge the testimony of Officer McKeever.  Thus, this claim is not cognizable.[32]  See Estelle v. McGuire, 502 U.S. at 67-68.

#### b.    On Direct Examination

Greene's sixth claim is that Officer McKeever offered evidence upon questioning from the prosecutor about the Ace Check Cashing robbery.  The District Attorney argues that this claim is procedurally defaulted because, on direct appeal, the Superior Court found that Petitioner had failed to object to the testimony at trial.  That failure constituted a waiver of the claim.

We have reviewed the Superior Court's opinion on direct appeal and find that the Superior Court did, indeed, conclude Petitioner had failed to object to Officer McKeever's

---

[32]We believe "jurists of reason" would not debate this conclusion.  Accordingly, a COA should not be granted for this claim.

testimony and the claim was waived for that reason. See Commonwealth v. Trice, No. 01829 Philadelphia 1996, slip op. at 10 (Pa. Super. Dec. 16, 1997).  As such, the claim is procedurally defaulted.[33]

In his September 30, 2005 response to the District Attorney's response, Petitioner has attempted to show cause for the procedural default of this claim by arguing that prosecutorial misconduct which undermined the truth determining process of his trial as well as ineffective assistance of counsel should constitute cause.  See Petitioner's September 30, 2005 Response at [4]-[5].[34]  Although his assertion of prosecutorial misconduct is not clear, it appears that Petitioner is simply relying upon this claim itself as cause for his default of the claim. This argument fails however in that there must be some independent factor which caused the procedural default in order to defeat it. See Coleman v. Thompson, 501 U.S. at 753.  Here, the claim was defaulted because Greene failed to object to the challenged testimony at trial.  See Commonwealth v. Trice, No. 01829 Philadelphia 1996, slip op. at 10 (Pa. Super. Dec. 16, 1997).  He fails to explain how any prosecutorial misconduct caused him, through his counsel, to fail to object at trial.  Thus, Petitioner's assertion of prosecutorial misconduct cannot excuse his default of this claim.

---

[33]It is true that the Superior Court went on to address the waived claim and found that it lacked merit.  See Commonwealth v. Trice, No. 01829 Philadelphia 1996, slip op. at 10 (Pa. Super. Dec. 16, 1997).  However, when a state court finds that a habeas Petitioner has failed to comply with a state procedural rule when presenting a claim, the habeas court may rely upon that procedural default and decline to consider the claim even if, in an alternative holding, the state court also addresses the merits of the claim. See Harris v. Reed, 489 U.S. 255, 264 n. 10 (1989).

[34]Petitioner failed to number the pages of his September 30, 2005 Response.  The cause and prejudice argument he makes is contained on the fourth and fifth pages of his Response.

It is true that Greene's attorney failed to object to the challenged testimony at trial and, if the attorney's failure to object constituted ineffective assistance of counsel, it would constitute cause to excuse the default.  See Coleman v. Thompson, 501 U.S. at 754. However, to constitute cause, a claim of ineffective assistance of counsel must itself be exhausted and not procedurally defaulted.  See Edwards v. Carpenter, 529 U.S. 446, 452-53 (2000).

We have reviewed Greene's PCRA petition and brief on appeal to the Superior Court.[35]  In the PCRA petition, Petitioner did not claim that trial counsel was ineffective for failing to object to Officer McKeever's testimony about the Ace Check Cashing robbery.[36] In his subsequent brief on appeal to the Superior Court, Greene raised only the overly broad and general claim that trial counsel was ineffective in representing him at trial and for failing to prepare for trial.  See Petitioner's June 26, 2003 Superior Court Brief at 10 (Exhibit E to the District Attorney's response).  Even if one were to accept that this vague assertion contained the specific claim that trial counsel was ineffective for failing to object to the evidence in question, the Superior Court found Greene's claim of ineffective assistance to be procedurally defaulted.  See Commonwealth v. Trice, No. 2663 EDA 2000, slip op. at 3 (Pa. Super. Dec. 31, 2003).  It cannot then constitute cause to excuse the procedural default.  See Edwards v. Carpenter, 529 U.S. at 452-53.  Further, Petitioner

---

[35]The District Attorney has attached copies of the PCRA petition and Superior Court brief as Exhibits C and E to its response.

[36]In his PCRA petition, Greene instead claimed that trial counsel was ineffective for failing to object to statements the assigned assistant district attorney had made during the trial.  See Petitioner's August 3, 1999 PCRA petition at 3 (Exhibit C to the District Attorney's response).

has made no effort to provide cause for the default of this claim so he cannot excuse the procedural default of his sixth claim.  He has also failed to present any new, reliable evidence of his innocence.[37]  Thus, he cannot demonstrate that the failure to review his claim will constitute a fundamental miscarriage of justice.[38]

### 4.        Detective Walsh Vouching for Demond Jackson

Greene's seventh claim is that Detective Walsh improperly vouched for the credibility of prosecution witness Demond Jackson while being cross-examined by a co-defendant's counsel.  The District Attorney argues that this claim is not cognizable in that it is based upon state law.  See Brief in Support pp. 40-43.

Petitioner relies on Buehl v. Vaughn, 166 F.3d 163 (3d Cir. 1999) as support for this claim.  Buehl is a habeas corpus case where the court was faced with the question of whether trial counsel had been ineffective for failing to object to the prosecutor's summation on the ground that the prosecutor had improperly vouched for witnesses and expressed his personal opinion regarding Buehl's guilt.  See Buehl, 166 F.3d at 176.  The court began its adjudication of this claim by noting the federal standards concerning a prosecutor stating his or her personal opinion regarding the credibility of witnesses or guilt of a defendant.  Id.  The court then went on to apply the federal principles contained in United States v. Young, 470 U.S. 1, 18-19 (1985) and United States v. Gross, 961 F.2d 1097, 1108 (3d Cir. 1992) to determine that the prosecutor's comments were not improper.

---

[37]See supra pp. 15-16.

[38]We believe "jurists of reason" would not debate our conclusion that Petitioner's claim is procedurally defaulted and barred from review.  Accordingly, no COA should be granted for the claim.

See Buehl, 166 F.3d at 176.   The court also concluded that given the weight of the evidence against Buehl, even if the prosecutor had not made the challenged comments, a reasonable jury would not have found Buehl innocent.  Id.  Thus, the court concluded that Buehl could not establish prejudice, which was required for him to prevail on his ineffective assistance of counsel claim.  Id.

Buehl suggests that the federal standards for a claim that a prosecutor has stated his or her personal opinions concerning the credibility of witnesses or the guilt of a defendant apply in habeas corpus.  The District Attorney has not identified any contrary precedent and so we conclude that the principles contained in Young and Gross can be applied in habeas corpus cases.  As this claim relies upon those principles, it is cognizable.

Petitioner argues that the rule which bars prosecutors from vouching for the credibility of their witnesses should be extended to cover the trial testimony of a police officer who vouches for the credibility of a prosecution witness.  Petitioner's claim was raised on direct appeal.  The Superior Court adjudicated the claim as follows:

> Our review of the testimony in question indicates that Detective Walsh was merely responding to questions by defense counsel asking him to explain why Jackson was dismissed as a suspect in the case.  Detective Walsh answered that, based upon his investigation, he deemed the information provided by Jackson to be truthful.  In any event, the appellants did not suffer prejudice as a result of the detective's comments because the trial court clearly instructed the jury that the detective's testimony was not to be viewed as a comment on Jackson's truthfulness.  The law presumes that juries follow a court's instructions.  Commonwealth v. English, --- Pa. --- , 699 A.2d 710 (1997); Commonwealth v. LaCava, 542 Pa. 160, 666 A.2d 221 (1995); Commonwealth v. Baker 531 Pa. 541, 614 A.2d 663 (1992).  Detective Walsh's remarks could not have affected the outcome of the appellants' trial.

Commonwealth v. Trice, No. 01829 Philadelphia 1996, slip op. at 9-10 (Pa. Super. Dec. 16, 1997).  The Superior Court's adjudication of the claim was based upon two, separate grounds.  First, the court took the position that Detective Walsh made no improper remarks because he was simply responding to questions posed to him by an attorney representing one of Greene's co-defendants.  Second, the court noted that the trial court instructed the jury that they were not to view Detective Walsh's testimony as a comment on Demond Jackson's truthfulness.  The Superior Court then noted that juries were presumed to follow their instructions and, based on this presumption, Petitioner's claim could not succeed.  We will focus on the Superior Court's second explanation for its adjudication of Greene's claim, in that it is not based upon any disputed facts.[39]  We conclude that this determination is not contrary to nor an unreasonable application of Supreme Court precedent.

The Superior Court's presumption that juries follow the instructions given by the trial court is consistent with Supreme Court precedent.  See Richardson v. Marsh, 481 U.S. 200, 206-07 (1987) (collecting numerous cases where the Supreme Court has presumed

---

[39]The crucial fact which supports the Superior Court's second explanation is the trial court's instruction to the jury that Detective Walsh's testimony not be viewed as a comment on Demond Jackson's truthfulness.  Petitioner does not argue that the Superior Court's representation concerning the trial court's instruction was unreasonable in light of the record before the Superior Court, nor does he attempt to rebut the required presumption that the Superior Court accurately stated the trial court's instruction.  Thus, he cannot be granted habeas relief under 28 U.S.C. § 2254(d)(2) and we must honor the presumption of correctness provided by 28 U.S.C. § 2254(e)(1).  Further, we have reviewed the trial transcript of Detective Walsh's testimony.  It is clear that, after Detective Walsh expressed his opinion concerning Demond Jackson's truthfulness, the trial court instructed the jury that they were to disregard Detective Walsh's opinion because they, not Detective Walsh, were to decide whether Demond Jackson was truthful.  (N.T. 3/6/96 at 88).  For all these reasons, the only basis for Petitioner to be granted habeas relief on his claim is for him to show that the Superior Court's legal conclusion was contrary to or an unreasonable application of Supreme Court precedent.

that a jury would follow its instructions to disregard evidence or use evidence for a limited purpose).  Indeed, in Marsh, the Court characterized the presumption as being "almost invariable."  Id. at 206.  The Court noted that there was a narrow exception to the presumption limited to facially incriminating confessions of non-testifying co-defendants.  Id. at 207.

This claim does not involve such evidence.  Rather, it involves a statement Detective Walsh made about a witness who testified on behalf of the prosecution.  The Superior Court's decision to rely upon the presumption that juries follow the Court's instructions does not contradict Supreme Court precedent.  Thus, its adjudication of Petitioner's claim was neither contrary to nor an unreasonable application of Supreme Court precedent and so he cannot obtain habeas relief under 28 U.S.C. § 2254(d)(1).  In addition, Greene does not challenge the Superior Court's adjudication of his claim as being unreasonable in light of the facts presented to the Court.  Therefore, 28 U.S.C. § 2254(d)(2) provides no basis to afford him habeas relief.[40]

### 5.    Prosecutorial Misconduct During Closing Argument

Greene's eighth claim is that, during closing argument, the prosecutor mentioned the confessions of co-defendants Finney and Womack and gestured to all the defendants to indicate they were all involved in the charged crimes.  See Brief in Support, pp. 44-47.  Petitioner asserts that the prosecutor's actions effectively subverted the trial court's ordered redaction of the confessions of co-defendants Finney and Womack.

---

[40]We believe "jurists of reason" would not debate our application of the AEDPA standard of review to this claim.  Accordingly, a COA should not be granted for the claim.

During her closing argument, the prosecutor summarized the evidence produced at trial. She specifically discussed evidence that showed the defendants had agreed to commit a robbery. (N.T. 3/11/95 at 64). In the course of doing so, she referred to the redacted confession of co-defendant Finney:

> Now, you know also by another piece of evidence that there has been an agreement, that there was going to be a robbery, because what Atil Finney says in his statement is he agreed with the others to get paid. When he was in that car with the other people. He agreed to get paid. That's another piece of evidence that the group had planned to in fact commit this robbery.

Id. at 64-65.

She then discussed the path the robbers took to the scene of the crime. Id. at 65. In the course of doing so, she referred to the redacted confession of co-defendant Womack:

> Now, you have to understand, jurors, that that is proven by attending circumstances. I mean, the way they act, what they knew and the fact that they immediately went to that location and they all got out. So that's the first piece of evidence that they had that they undertook the robbery, and remember, that in Womack – in defendant Womack's statement he in fact said they go over to the grocery store.

Id. at 65-66. At that point, an objection was lodged and the matter was discussed out of the presence of the jury. Id. at 66. During the discussion, counsel for co-defendant Abdullah explained that the prosecutor had improperly attempted to prompt the jurors to use the confessions of co-defendants Finney and Womack against the other defendants. Id. at 66-67. Counsel also noted that the prosecutor had pointed and gestured to the defendants while making her argument. Id. at 67. In light of what the prosecutor had done, the trial court decided that a curative instruction would be given. Id. at 68.

42

Petitioner's counsel then asked for a mistrial based on the prosecutor's argument but the trial judge denied the motion. Id. Once back in the presence of the jury, the trial court instructed the jury that an out-of-court statement can only be used against the person who makes the statement, it cannot be used against anyone else. Id. at 69.

Petitioner's claim was raised on direct appeal. The Superior Court adjudicated the claim as follows:

> Appellants next claim that the prosecutor, during closing arguments, pointed at them and the other co-defendants and said that the confessions of their non-testifying co-defendants corroborated their guilt. Consistent with the manner in which the confessions/statements were redacted, the prosecutor did not mention names in her comments at issue; rather, she used the words "others," "other people," and "they." See Washington, [692 A.2d 1018 (Pa. 1997)] (prosecutor's use of the word "they" while discussing a co-defendant's confession was insufficient to prejudice the jury against appellant); Brooks, [660 A.2d 609, 613 (Pa. Super. 1995)] (the practice of substituting pronouns or "other persons" for specific names has been approved by our courts). Moreover, any alleged harm was alleviated by the cautionary instructions given by the trial court. It is presumed that the jury followed this instruction. English, [699 A.2d 710 (Pa. 1997)]; LaCava, [666 A.2d 221 (Pa. 1995)]; Baker, [614 A.2d 663 (Pa. 1992)].

Commonwealth v. Trice, No. 01829 Philadelphia 1996, slip op. at 10-11 (Pa. Super. Dec. 16 1997).

The Superior Court again relied upon the usual presumption that jurors follow the cautionary instructions given by the trial court. This presumption is subject only to the narrow exception for facially incriminating confessions by a co-defendant who does not testify at the non-confessing defendant's trial and is well grounded in United States Supreme Court precedent. See Richardson v. Marsh, 481 U.S. at 206-207. As we

explained when discussing Petitioner's fourth claim, the redacted confessions of co-defendants Finney and Womack do not incriminate Petitioner on their face.  Thus, it can be presumed that the jury followed the trial court's limiting instruction.  Id. at 208-09, 211.

In this eighth claim, Petitioner argues that the prosecutor attempted to undermine the salutary effect of the trial court's redaction of the confessions and the trial court's limiting instructions by her actions during closing argument.   Neither Bruton nor Marsh speak to such an effort, nor does any other Supreme Court opinion decided before the Superior Court's adjudication of Greene's claim.   Since there is no United States Supreme Court precedent which addresses such a claim, the Superior Court's adjudication cannot be contrary to Supreme Court precedent.  See Fischetti v. Johnson, 384 F.3d 140, 150 (3d Cir. 2004) (noting that a state court adjudication of a claim cannot be contrary to Supreme Court precedent when there is a lack of Supreme Court precedent dealing with the precise issue raised by the claim).   Further, given the lack of clearly established Supreme Court precedent and in light of the general presumption that jurors do follow their instructions, it was reasonable for the Superior Court to conclude that the jury would follow these instructions given, particularly when the trial court repeated these instructions just after the prosecutor made the arguments which are claimed to undermine the instructions. For these reasons, Petitioner cannot obtain habeas relief under 28 U.S.C. § 2254(d)(1). In addition, Greene does not challenge the Superior Court's adjudication of his claim as being unreasonable in light of the facts presented to the Superior Court.  Thus, 28 U.S.C. § 2254(d)(2) also provides no basis to afford him habeas relief.[41]

_____

[41]We believe "jurists of reason" would not debate our application of the AEDPA standard of review to this claim.  Accordingly, a COA should not be granted for the claim.

### G.   Ineffective Assistance of Counsel Claims

Greene has raised three claims of ineffective assistance of counsel. He claims that all of his prior counsel were ineffective for failing to obtain a complete trial transcript. He also claims that his trial and direct appeal counsel was ineffective because he failed to prepare for trial or investigate the case. Finally, he claims his PCRA counsel was ineffective for failing to conduct an investigation which would have led him to conclude that trial and direct appellate counsel had been ineffective.

We discuss each claim on an issue-by-issue basis within. We find that each claim is either not cognizable or procedurally defaulted. We also find that Greene has not established cause and prejudice or fundamental miscarriage of justice such as to excuse the default.[42]

### 1.   Failure to Obtain a Complete Trial Transcript

Petitioner argues that all prior counsel were ineffective for failing to obtain a complete trial transcript. To the extent that he seeks to challenge the performance of PCRA counsel, such a claim is expressly barred as a ground for relief by the habeas statute. See 28 U.S.C. § 2254(i). Therefore, the claim is not cognizable.[43]

---

[42]Since all of Petitioner's ineffective assistance claims are not cognizable or procedurally defaulted, they will not be reviewed on their merits. Were we to review the claims on their merits, they would be evaluated against the two-part test announced in Strickland v. Washington, 466 U.S. 668 (1984). For the first part of the test, Petitioner would have to establish that counsel's representation "fell below objective standard of reasonableness." Id. at 688. For the second part, he would have to demonstrate that counsel's error or omission prejudiced him. Id. at 691-92.

[43]We believe "jurists of reason" would not debate this conclusion. Accordingly, a COA should not be granted for this claim.

As for Petitioner's challenge to trial and direct appellate counsel's performance for failing to obtain a complete trial transcript, the District Attorney argues that the claim was never presented in the state courts. The record reveals that Greene was represented by the same attorney at trial and on direct appeal. For this reason, his first opportunity to raise a claim that his trial and direct appellate counsel was ineffective would have been during PCRA proceedings. We have reviewed the PCRA petition Greene filed and the brief he filed in the Superior Court to appeal the denial of PCRA relief.[44] He did not claim there that trial and direct appellate counsel was ineffective for failing to obtain a complete trial transcript. The claim has therefore not been exhausted in Pennsylvania's courts. If Greene is now barred by state law from exhausting the claim, it is procedurally defaulted. See Coleman v. Thompson, 501 U.S. at 735 n.1.

Petitioner could attempt to exhaust his claim by filing a new PCRA petition. Were he to do so, he would be faced with the obstacle of the PCRA statute of limitations. The PCRA has a one year statute of limitations which ordinarily begins to run at the time a conviction becomes final on direct appeal. 42 Pa. C.S.A. § 9545(b)(1). While there are exceptions which would excuse the late filing of a PCRA petition, those exceptions apply only when governmental interference has prevented the defendant from filing his petition in a timely manner, when the defendant has discovered new evidence or when the defendant's claim relies upon a new constitutional right which has been held to be retroactively applicable by the court (United States Supreme Court or Supreme Court of

---

[44]The District Attorney has attached copies of the Petitioner's 1999 PCRA petition and his subsequent brief on appeal to the Superior Court as Exhibits C and E to its response.

Pennsylvania) announcing the new right.  42 Pa. C.S.A. § 9545(b)(1)(i)-(iii).  This claim does not implicate any of these exceptions.  Thus, for this claim, the PCRA statute of limitations began to run on the date his conviction became final.

On direct appeal, Petitioner was initially granted allowance of appeal by the Supreme Court of Pennsylvania but, on April 29, 1999, the court dismissed the appeal as improvidently granted.  Greene did not thereafter seek certiorari from the United States Supreme Court.  The time for him to seek certiorari expired 90 days after the Supreme Court of Pennsylvania dismissed his appeal.  See Sup. Ct. R. 13(1).  On that day, July 28, 1999, his conviction became final for purposes of the PCRA statute of limitations.  See 42 Pa. C.S.A. § 9545(b)(3).  The PCRA statute of limitations expired one year later on July 28, 2000.  Thus, it is clear that Greene cannot timely file a new PCRA petition to raise his claim.[45]  Because the PCRA statute of limitations prevents him from exhausting his claim, it is procedurally defaulted.  See Keller v. Larkins, 251 F.3d 408, 415 (3d Cir. 2001).

Greene has not argued that any cause and prejudice will excuse the default of his claim.  He has also failed to present any, new reliable evidence of his innocence.[46]  Thus,

---

[45]We are aware that Greene filed a new PCRA petition on August 6, 2004.  The District Attorney attached a copy of the new PCRA petition as Exhibit G to her response. In the new PCRA petition, Greene did not raise the instant claim.  Instead, he raised a claim based upon the United States Supreme Court's recent decision in Crawford v. Washington, 541 U.S. 36 (2004).

[46]As we have explained supra at pp. 15-16 with respect to Greene's defaulted claim involving the alleged deprivation of an effective appeal, he has asserted his innocence. However, an assertion of innocence without new, reliable evidence to support it is insufficient to satisfy the Schlup v. Delo standard.

he cannot demonstrate that the failure to consider this claim will result in a fundamental miscarriage of justice.[47]  See Schlup v. Delo, 513 U.S. at 316-17, 324.

### 2.    Failure to Prepare for Trial or Investigate the Case

Petitioner's tenth claim is that trial and direct appellate counsel was ineffective because he failed to prepare for trial or investigate the case.  This claim was raised in the PCRA petition and appeal.  On appeal, the Superior Court found that it was waived because as it was not developed with any specificity. See Commonwealth v. Trice, No. 2663 EDA 2000, slip op. at 3 (Pa. Super. Dec. 31, 2003) (citing Commonwealth v. Farmer, 758 A.2d 173, 180-81 (Pa. Super. 2000)).  It is now therefore procedurally defaulted.

Petitioner has not argued that any cause and prejudice will excuse the default of this claim.  He has also failed to present any, reliable new evidence of his innocence.[48]  Thus, he cannot demonstrate that the failure to consider his claim will result in a fundamental miscarriage of justice.[49]  See Schlup v. Delo, 513 U.S. at 316-17, 324.

### 3.    PCRA Counsel's Failure to Investigate

Greene's eleventh claim is that PCRA counsel was ineffective for failing to conduct an investigation which would have caused him to conclude that trial and direct appellate counsel had been ineffective.  The habeas statute expressly bars any claim that PCRA

---

[47]We believe that "jurists of reason" would not debate our conclusion that Petitioner's claim is procedurally defaulted and barred from review.  Accordingly, no COA should be granted for the claim.

[48]See supra n. 45.

[49]We believe that "jurists of reason" would not debate our conclusion that Petitioner's claim is procedurally defaulted and barred from review.  Accordingly, no COA should be granted for the claim.

counsel was ineffective from being a basis for granting habeas relief.  See 28 U.S.C. § 2254(i).  Thus, this claim is not cognizable.[50]

For the foregoing reasons, the court's recommendation follows.

## RECOMMENDATION

AND NOW, this 26th day of January, 2006, it is respectfully **RECOMMENDED** that the petition for a writ of habeas corpus be **DISMISSED**.  It is **FURTHER RECOMMENDED** that a **CERTIFICATE OF APPEALABILITY** should **ISSUE** with respect to Petitioner's Sixth Amendment Confrontation Clause claim concerning the redacted confessions of his co-defendants Atil Finney and Gregory Womack.


_____/s/ David R. Strawbridge___
DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE

---

[50]We believe that "jurists of reason" would not debate this conclusion.  Accordingly, a COA should not be granted for this claim.