IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERIC GREENE, a/k/a JARMAINE Q. TRICE, | |
| Petitioner, | |
| v. | CIVIL ACTION NO. 04-5200 |
| JOHN A. PALAKOVICH, et al., | |
| Respondents. | |

## OPINION

**Slomsky, J.** **August 26, 2016**

## I.   INTRODUCTION

Before the Court is Petitioner Eric Greene's Amended Motion for Relief Pursuant to Federal Rule of Civil Procedure 60(b).[1]  (Doc. No. 47.)  This Motion is the latest filing in a decades-long effort to obtain judicial review of an alleged constitutional violation that occurred at his trial for second degree murder in 1996.  For reasons that follow, the Motion will be denied.

## II.   BACKGROUND

The May 28, 2010 opinion of the Third Circuit Court of Appeals provides a descriptive backdrop of the case:

> *The Crime*
> In early December of 1993, three or four men robbed a small family owned grocery store in North Philadelphia, and its owner, Francisco Azcona, died after being shot at point-blank range. When the robbers were unable to open the cash register, they picked it up and carried it out of the store, escaping in a station wagon parked nearby. A week after Mr. Azcona's murder, [Petitioner], Julius Jenkins, Atil Finney, and Gregory Womack robbed a check cashing facility. They were apprehended shortly thereafter and the police seized a firearm. Through ballistics testing, the police determined that the seized firearm was used in Mr. Azcona's murder. With this evidence, the police were able to make progress in the murder investigation.

---

[1]   Petitioner is also known as Jarmaine Trice.  (Doc. No. 47 at 4.)

*The Investigation*

In late February of 1995, Detective Robert Snell of the Philadelphia Police Department questioned Demond Jackson about his involvement in Mr. Azcona's murder. Jackson admitted that he was in the station wagon parked outside of the grocery store the night of the murder, but he claimed that he was simply getting a ride to West Philadelphia when the others stopped at the store. He described how several of them went inside and committed the murder. He also identified Jenkins as the shooter, and indicated that Naree Abdullah carried the cash register out of the store.[2] According to Jackson, Finney entered the store with Jenkins and Abdullah, while [Petitioner] remained with the driver and Jackson in the automobile. Jackson added that the proceeds of the robbery were split among only five of the men, and that he did not take a share of the proceeds.

Armed with the information from Jackson, Detective Michael Gross of the Philadelphia Police Department questioned Finney in early March of 1995. Finney gave a statement to the police in which he admitted that he was one of the participants in the grocery store robbery and that he was inside the store at the time of the robbery. He identified Jenkins as the shooter, implicated [Petitioner] as the robber who carried the cash register out of the store, indicated that Womack had driven the station wagon, and stated that another individual was involved in the robbery. Although Finney initially stated that five people were involved in the robbery, he later noted that there were six people in the car. A few days later, Detective Joseph Walsh of the Philadelphia Police Department questioned Womack. Womack gave a statement to the police in which he admitted he was the driver of the station wagon the night that Jenkins killed Mr. Azcona. In addition, he implicated Finney, Abdullah, and [Petitioner] in the robbery.

Shortly after these statements were obtained, first degree murder charges were filed against Jenkins. [Petitioner], Finney, Womack, and Abdullah were charged with, *inter alia,* second degree murder, three counts of robbery, and conspiracy.

*The Trial*

[Petitioner] filed a pretrial motion seeking severance on several grounds. In that motion, he argued, *inter alia,* that a joint trial with his codefendants would be prejudicial because of the incriminating statements they had made to authorities. As support for his motion, [Petitioner] cited *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), and *Richardson v. Marsh,* 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987). During a pretrial hearing, [Petitioner] urged the trial court, the Court of Common Pleas of Philadelphia, to sever the trials because the statements of some of his non-testifying codefendants implicated him and identified him as the person who carried the cash register out of the grocery store. The trial court, recognizing that the statements might be

---

[2]   Neither Naree Abdullah nor Demond Jackson was involved in the subsequent check cashing business robbery.

inadmissible at a joint trial, but also noting that redaction might resolve any problem of prejudice, posed a hypothetical to the parties:

> Judge: It's unusual to do this, but suppose the statement is redacted to say, "I didn't take the cash register." In other words, each defendant's statement would state—
>
> [Petitioner's Counsel]: I didn't take it.
>
> Judge: I didn't. Someone else took the cash register.
>
> [Petitioner's Counsel]: There's another nuance that I want Your Honor to know because your suggestion is brilliant. I just want to factor in one more thing. Of the three co-defendants who gave statements, indeed, Atil Finney says that my client took the cash register and Mr. Gregory Womack made the statement that my client was involved in that, but believe it or not, Julius Jenkins says that someone entirely different—he says that either Naree or another person . . . took the cash register, either Womack or Naree, so you have Mr. Jenkins saying specifically that one of two other people took it—people involved, I might add, but not [Petitioner].

In response, the Court declared that the statements were not interlocking and inquired how the conflicting statements "pin point[ed]" [Petitioner] since the jury would have "information that three different people have been named as having taken the cash register." [Petitioner's] counsel replied that the Court's analysis was "excellent," but wondered how the Commonwealth would redact the statements. The Court replied that "it seems to me that the fair way to redact these [statements] is to refer to three different people." [Petitioner's] counsel responded: "As long as I would be allowed to argue in my closing speech that you heard what you heard and you heard that there were different people, then I would have no problem with [it]." The prosecutor offered to redact the statements so that "not one specific person carries out the cash register." [Petitioner's] counsel agreed that, under *Bruton,* such a redaction would remove any prejudice from the statements. [Petitioner's] counsel also pressed, without success, an additional basis for severance: that Jenkins, who would be tried alongside [Petitioner], was facing a capital murder charge.

[Petitioner's] trial was held in February of 1996. At trial, Mr. Azcona's wife and sister-in-law identified Jenkins as the shooter, but they were unable to identify any of the other robbers in the store or to state with certainty whether there were three or four men involved in the robbery.

Jackson, who had not been charged with any crimes associated with the robbery, was the prosecution's star witness. His testimony differed significantly from his statement to Detective Snell. Jackson testified that all of the occupants of the

station wagon went into the store except for him and Womack. Contrary to his earlier statement that Abdullah picked up the cash register, Jackson testified that [Petitioner] took the cash register from the store. Jackson was cross-examined extensively on the differences between his earlier statement and his trial testimony. In addition, [Petitioner] attacked Jackson's credibility by highlighting that Jackson was present in Womack's station wagon but had not been charged with any crimes related to the robbery and that Jackson had outstanding drug charges.

The Commonwealth also called Detectives Gross and Walsh to testify about the statements they obtained from Finney and Womack. Neither [Petitioner] nor his codefendants objected to the reading of those statements in redacted form. Detective Gross read Finney's redacted statement, which substituted the nicknames or proper names of Finney's codefendants with the phrases "this guy," "other guys," and "two guys." The redacted statement also used the neutral pronouns "we" or "someone" in certain instances. For example, Finney's initial description of the robbery in its redacted form read:

> We were riding around in this, this guy's car, me and three other guys were in the North Philadelphia. We—when one said let's get paid. Everyone said okay and we saw this store. So me and two guys went in the store. When we got inside two guys stayed up front and I stayed to the back. One guy had his gun on the guy and was at the cash register getting the money, but it wouldn't open. I heard a shot and looked over. Blood was coming out of the guy's mouth. After that someone grabbed the register and we all ran out.

In at least one instance, when Detective Gross reached a portion of the statement where Finney was asked to identify "these guys" by their full names, the redaction simply deleted the names. The redacted answer stated: "One is and the other is." Later in the statement, when Finney was asked if he recognized anyone in certain photographs, the redacted answer stated: "Number three is. Number six is. Number eight is." The redacted statement also replaced the names of certain defendants with the word "blank" on four occasions. During Detective Gross's reading of the redacted statement, the trial court instructed the jury that Finney's statement could only be considered as evidence against him and not as evidence against any other defendant.

Detective Walsh, during his testimony, read a redacted version of Womack's statement. In it, Womack declared:

> It was me and another guy. We were in the car, the other three went in the store. The car was around the corner and then they came out of the store carrying a cash register. As we pulled off the shooter said he shot the guy. I think someone asked him why did he shoot the guy? He didn't answer him. Then we drove up our

neighborhood. Then we drove to someone's and we opened the register and got the money and we took the register and dumped it in a trash dumpster in a townhouse.

Although the redacted statement utilized neutral references such as "guy," "another guy," "someone," "someone else," "one," and "others," it replaced the names of some of the codefendants with the word "blank" on three occasions. The trial court did not give a limiting instruction following the reading of Womack's redacted statement, and neither [Petitioner] nor any of his codefendants requested such an instruction.

After closing arguments, the trial court issued a limiting instruction directing the jurors not to consider either redacted statement as evidence against any defendant other than the declarant. The jury found [Petitioner] guilty of second degree murder, three counts of robbery, and one count of conspiracy. The trial court sentenced him to life imprisonment.

### Subsequent Procedural History

[Petitioner] filed a direct appeal with the Pennsylvania Superior Court. Citing *Bruton,* [Petitioner] argued that his trial should have been severed from that of his codefendants because the statements implicating him "were not suitable for redaction." On December 16, 1997, the Pennsylvania Superior Court affirmed the judgment against [Petitioner], addressing his *Bruton* claim on the merits. The Court observed that the statements that were admitted into evidence "were redacted to remove any reference to the other defendants in the case" and "[t]he trial court instructed the jury on more than one occasion that such statements could only be considered as evidence against the defendants who made them." In light of these observations, the Pennsylvania Superior Court concluded that *Bruton* was not violated and that [Petitioner] was not deprived of his right to confrontation.

[Petitioner] filed a timely petition for allowance of appeal with the Pennsylvania Supreme Court. His petition argued, *inter alia,* that he had been deprived of his rights under the Confrontation Clause by the introduction of Womack's and Finney's statements. As support for his position, [Petitioner] again cited *Bruton.* While [Petitioner's] petition for allowance of appeal was pending with the Pennsylvania Supreme Court, the United States Supreme Court issued its decision in *Gray.* In *Gray,* the Supreme Court stated that "considered as a class, redactions that replace a proper name with an obvious blank, the word 'delete,' a symbol, or similarly notify the jury that a name has been deleted are similar enough to *Bruton*'s unredacted confessions as to warrant the same legal results." 523 U.S. at 195, 118 S.Ct. 1151. Thereafter, the Pennsylvania Supreme Court granted [Petitioner's] petition for allocatur "limited to the issue of whether the common pleas court erred by denying the motion for severance thereby resulting in the violation of [Petitioner]'s Sixth Amendment right of confrontation upon the admission of statements given by his nontestifying codefendants."

5

*Commonwealth v. Trice,* 552 Pa. 201, 713 A.2d 1144 (1998). After granting the petition for allocatur, however, the Pennsylvania Supreme Court dismissed [Petitioner's] appeal as improvidently granted. *Commonwealth v. Trice,* 556 Pa. 265, 727 A.2d 1113 (1999). [Petitioner's] conviction became final ninety days later, on July 28, 1999, when the time period for filing a petition for certiorari to the United States Supreme Court expired. *See Kapral v. United States,* 166 F.3d 565, 570–71 (3d Cir. 1999).

In early August of 1999, [Petitioner] sought relief from his conviction based on Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. §§ 9541–9546. In his PCRA petition, [Petitioner] argued that the trial court abused its discretion in denying the severance motion, and cited, *inter alia,* the prosecutor's summation, which allegedly improperly informed the jury that Finney's statement corroborated that the others on trial were implicated in the commission of the crime. The PCRA petition did not assert a Confrontation Clause claim as it failed to reference the redacted statements or to cite the Supreme Court's decisions in *Bruton, Marsh*, or *Gray.* The trial court dismissed [Petitioner's] PCRA petition as frivolous. [Petitioner], acting pro se, appealed the denial of his PCRA petition to the Pennsylvania Superior Court, asserting that the trial court erred by refusing to grant a severance. His argument cited only Pennsylvania authority regarding motions to sever multiple criminal charges. He did not refer to the Confrontation Clause, *Bruton, Marsh* or *Gray.* On December 31, 2003, the Pennsylvania Superior Court affirmed the dismissal of [Petitioner's] PCRA petition, noting that the severance claim had been finally litigated and could not afford him collateral relief. [Petitioner] filed another petition for allowance of appeal with the Pennsylvania Supreme Court, which denied allocatur.

[A] timely § 2254 petition followed. In his petition, [Petitioner] asserted, *inter alia,* that his trial should have been severed "due to antagonistic defenses, due to the fact a codefendant was subjected to the death penalty even though [Petitioner] was not, and particularly due to the fact that effective redaction of the codefendant's [sic] statements, though attempted, was polluted by gross prosecutorial misconduct." In a comprehensive report, the Magistrate Judge to whom the petition had been referred recommended that [Petitioner's] petition be dismissed, but that a certificate of appealability be granted on the Confrontation Clause claim arising out of the introduction of Womack's and Finney's redacted statements at trial.

The Magistrate Judge struggled with whether to determine the "clearly established Federal law" under § 2254(d)(1) as of the date of the relevant state-court decision, as instructed by Justice O'Connor in her portion of the majority decision in *Williams v. Taylor,* 529 U.S. 362, 403–412, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), or by the date [Petitioner's] conviction became final, as instructed by Justice Stevens in his portion of the majority decision in *Williams, id.* at 390, 120 S. Ct. 1495. This issue was significant because it determined whether "clearly

established Federal law" for purposes of [Petitioner's] § 2254 petition included the Supreme Court's decision in *Gray.* If the cutoff date was the date of the relevant state-court decision, *i.e.,* the Pennsylvania Superior Court's December 16, 1997 decision affirming [Petitioner's] convictions on direct appeal, that date preceded the Supreme Court's decision in *Gray,* and *Gray would not* be part of the "clearly established Federal law" applicable to this habeas petition. But if the date [Petitioner's] convictions became final, July 28, 1999, was the pertinent cutoff date, *Gray,* which was issued more than a year earlier on March 9, 1998, *would* be "clearly established Federal law."

The Magistrate Judge ultimately determined that the controlling date for ascertaining the "clearly established Federal law" for [Petitioner's] habeas petition was the date of the relevant state-court decision. Accordingly, the Magistrate Judge applied the Supreme Court law existing at the time of the Pennsylvania Superior Court's December 16, 1997 decision, *Bruton* and *Marsh,* to determine whether [Petitioner's] § 2254 petition merited relief. He concluded that the Pennsylvania Superior Court did not unreasonably apply *Bruton* and *Marsh* in concluding that the redacted statements did not violate the Confrontation Clause and recommended that the District Court deny the § 2254 petition.

The Commonwealth objected to the Magistrate Judge's report, arguing that [Petitioner] had not procedurally exhausted his Confrontation Clause claim. The District Court overruled the Commonwealth's objections, noting that [Petitioner] presented a general claim regarding the redacted confessions and relied upon relevant Supreme Court authority, *Bruton* and *Marsh.* The District Court adopted the Magistrate Judge's report and recommendation. The Court denied the petition, but also granted a certificate of appealability limited to [Petitioner's] Confrontation Clause claim.

Greene v. Palakovich, 606 F.3d 85, 87-93 (3d Cir. 2010), aff'd sub nom. Greene v. Fisher, 132 S.

Ct. 38 (2011).

A divided panel on the Third Circuit affirmed the District Court. Id. at 106. The court noted that the case presented a novel and "vexing conundrum," but ultimately held that the "clearly established Federal law" in § 2254(d) referred to the law at the time of the state court adjudication on the merits. Id. Judge Ambro concurred in part and dissented in part, reasoning that "clearly established Federal law" should refer to the law at the time a petitioner's conviction becomes final. Id. at 108. Petitioner appealed to the Supreme Court of the United States, and the Supreme Court granted certiori. On November 8, 2011, it affirmed, agreeing with the Third

Circuit that under § 2254(d), "clearly established Federal law" is the law at the time of the state court adjudication on the merits.  Greene, 132 S. Ct. at 41.  In affirming the decision of the Third Circuit, the Supreme Court stated:

> We must observe that [Petitioner's] predicament is an unusual one of his own creation. Before applying for federal habeas, he missed two opportunities to obtain relief under *Gray:* After the Pennsylvania Supreme Court dismissed his appeal, he did not file a petition for writ of certiorari from this Court, which would almost certainly have produced a remand in light of the intervening *Gray* decision. "Where intervening developments . . . reveal a reasonable probability that the decision below rests upon a premise that the lower court would reject if given the opportunity for further consideration, and where it appears that such a redetermination may determine the ultimate outcome of the litigation, [an order granting the petition, vacating the judgment below, and remanding the case (GVR) ] is, we believe, potentially appropriate." *Lawrence v. Chater,* 516 U.S. 163, 167, 116 S.Ct. 604, 133 L.Ed.2d 545 (1996) *(per curiam). See, e.g., Stanbridge v. New York,* 395 U.S. 709, 89 S.Ct. 2033, 23 L.Ed.2d 655 (1969) *(per curiam)* (GVR in light of *Bruton*). Nor did [Petitioner] assert his *Gray* claim in a petition for state postconviction relief. Having forgone two obvious means of asserting his claim, [Petitioner] asks us to provide him relief by interpreting [Antiterrorism and Effective Death Penalty Act] in a manner contrary to both its text and our precedents. We decline to do so, and affirm the judgment of the Court of Appeals.

Id. at 45.

On December 22, 2014, Petitioner Eric Greene filed a pro se Motion to Vacate the District Judge's Order and Memorandum Pursuant to Federal Rule of Civil Procedure 60(b)(6). (Doc. No. 39.)  On August 17, 2015, Petitioner filed a counseled Amended Motion for Relief Pursuant to Federal Rule of Civil Procedure 60(b) (the "Amended Motion" or the "60(b) Motion").  (Doc. No. 47.)   In the Amended Motion, Petitioner argues that extraordinary circumstances justify relief from the judgment denying Petitioner's federal habeas petition. (Doc. No. 47 at 24.)  Respondents John A. Palakovich, the District Attorney of the County of Philadelphia, and the Attorney General of the State of Pennsylvania filed a Response on December 9, 2015, and Petitioner filed a Reply on January 6, 2016.  (Doc. Nos. 58, 61.)  The

Court held a hearing on the Motion on February 18, 2016.[3]  For reasons that follow, Petitioner's Amended Motion will be denied.

## III.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 60(b) allows a district court to "relieve a party or its legal representative from a final judgment, order, or proceeding."  Petitioner asks the Court to grant relief under 60(b)(6), the rule's "catch-all" provision.  Relief from judgment pursuant to Rule 60(b) may be granted on the following grounds:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Fed. R. Civ. P. 60(b).

Rule 60(b)(6) "vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice."  Devon IT, Inc. v. IBM Corp., No. 10-2899, 2013 WL 6721748, at *3 (E.D. Pa. Dec. 20, 2013) (quoting Klapprott v. United States, 335 U.S. 601, 615 (1949)) (internal quotation marks omitted).  "This provision applies only when there are reasons for relief other than those set out in the more specific clauses of Rule 60(b)."  Id.  Moreover, the Court should utilize 60(b)(6) sparingly and only in "extraordinary circumstances where, without such relief, an extreme and unexpected hardship would occur."  Id.

---

[3]    Following the hearing, the parties filed supplemental briefs.  (Doc. Nos. 70, 71.) Additionally, Petitioner filed a Motion for Evidentiary Hearing on the issue of timeliness of the 60(b) Motion, which the Court granted.  (Doc. Nos. 72, 73.)  Ultimately, however, the parties submitted a Stipulation in Lieu of Evidentiary Hearing (Doc. No. 79) which obviated the need for an evidentiary hearing.  The Court has considered all of the above filings in coming to a decision.

at 120 (quoting <u>Swaka v. Healtheast, Inc.</u>, 989 F.2d 138, 140 (3d Cir. 1993)).  The district court should employ a "flexible, multifactor approach to Rule 60(b)(6) motions . . . that takes into account all the particulars of a movant's case."  <u>Cox v. Horn</u>, 757 F.3d 113, 122 (3d Cir. 2014).

## IV.    ANALYSIS

Petitioner's plea for relief falls short for several reasons.  First, his Motion constitutes an impermissible successive habeas petition.  Second, <u>Martinez v. Ryan</u>, 132 S. Ct. 1309 (2012), does not apply to Petitioner's ineffective assistance of counsel claim.  Finally, even if Petitioner's Motion did not constitute an impermissible successive habeas petition, and even if <u>Martinez</u> applied to provide "cause" for Petitioner's procedural default, the equitable factors warranting consideration under Rule 60(b) do not weigh in Petitioner's favor.  The Court will discuss each basis for the denial of Petitioner's Motion below.

### A.    Successive Habeas Petition

First, the Court will consider whether Petitioner's 60(b) Motion is, in essence, an unauthorized successive habeas petition under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  The parties here dispute whether the 60(b) Motion constitutes a successive habeas petition.  Respondents argue that the 60(b) Motion "seeks to add a new ground for relief," and is therefore improper.  (Doc. No. 58 at 5 (quoting <u>Gonzalez v. Crosby</u>, 545 U.S. 524, 532 (2005)).)  According to Respondents, though Petitioner raised various claims of ineffective assistance of counsel in his federal habeas petition, he did not raise the present claim that his appellate counsel failed to advise him regarding his options for Supreme Court review.  (Doc. No. 58 at 5.)

Petitioner counters that his claim of appellate ineffectiveness surrounding the failure to advise Petitioner to file a writ of certiorari with the Supreme Court is based on the same "common core of operative facts" as the ineffectiveness claims in his Petition, and therefore it is

not a new claim.  (Doc. No. 61 at 5 (quoting <u>Mayle v. Felix</u>, 545 U.S. 644, 664 (2005).)

Moreover, argues Petitioner, the "common core" test is appropriate here because Petitioner pled

his claims in the habeas petition "broadly."[4]  (<u>Id.</u> at 6.)  Petitioner states that he "should not

suffer now because the Magistrate did not discern the rather obvious appellate ineffectiveness

presented in the Motion."  (<u>Id.</u>)

Rule 60(b) cannot be used to circumvent AEDPA's restrictions against second or

successive petitions.  <u>Gonzalez</u>, 545 U.S. at 532.  Where "the factual predicate of a petitioner's

Rule 60(b) motion attacks the manner in which the earlier habeas judgment was procured and not

the underlying conviction," the motion may properly be decided on the merits.  <u>Pridgen v.</u>

<u>Shannon</u>, 380 F.3d 721, 727 (3d Cir. 2004).  "However, when the Rule 60(b) motion seeks to

collaterally attack the petitioner's underlying conviction, the motion should be treated as a

successive habeas petition. . . . this rule is consonant with Congress's goal of restricting the

availability of relief to habeas petitioners."  <u>Id.</u>

Where a 60(b) motion requests that the Court review a substantive claim—whether raised

in previous proceedings or not—it is improper absent permission from the Court of Appeals.[5]

The Supreme Court in <u>Gonzalez</u> stated:

> In most cases, determining whether a Rule 60(b) motion advances one or more
> "claims" will be relatively simple. A motion that seeks to add a new ground for

---

[4]   Magistrate Judge Strawbridge interpreted the Habeas Petition as comprising twelve claims,
two of which concerned ineffectiveness of appellate counsel.  <u>Greene v. Palakovich</u>, 482 F.
Supp. 2d 624, 628 n.1 (E.D. Pa. 2007), <u>aff'd</u>, 606 F.3d 85 (3d Cir. 2010), <u>aff'd sub nom.</u>
<u>Greene v. Fisher</u>, 132 S. Ct. 38 (2011).

[5]   Under AEDPA, Petitioner must first seek permission from the Third Circuit before filing a
successive habeas petition.  <u>See</u> 28 U.S.C. § 2244(b)(3)(A) ("Before a second or successive
application permitted by this section is filed in the district court, the applicant shall move in
the appropriate court of appeals for an order authorizing the district court to consider the
application.")  Therefore, any second or successive habeas petition filed in this Court without
prior approval by the Third Circuit is improper.

relief, as in *Harris, supra,* will of course qualify. A motion can also be said to bring a "claim" if it attacks the federal court's previous resolution of a claim *on the merits*, since alleging that the court erred in denying habeas relief on the merits is effectively indistinguishable from alleging that the movant is, under the substantive provisions of the statutes, entitled to habeas relief. That is not the case, however, when a Rule 60(b) motion attacks, not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings.

545 U.S. at 532 (footnote omitted).

The Court in Gonzalez cited fraud on the federal habeas court as an example of a proper 60(b) allegation, and explained that a motion under 60(b) is not barred where a petitioner "merely asserts that a previous ruling which precluded a merits determination was in error—for example, a denial for such reasons as failure to exhaust, procedural default, or statute-of-limitations bar." Id. at 532 n.4, n.5. District Courts have repeated this rule. See, e.g., Box v. Petsock, No. 3:86-CV-1704, 2014 WL 4093248, at *15 (M.D. Pa. Aug. 18, 2014) ("To the extent the instant motion attempts to raise new allegations of ineffectiveness decades after habeas relief was denied, the motion again must be construed as a successive section 2254 petition and cannot be considered by this Court."); United States v. Gagliardi, No. CIV. A. 10-480, 2011 WL 1362620, at *3 (E.D. Pa. Apr. 6, 2011) ("Defendant's challenge to our adjudication of his ineffective assistance of counsel claim, on the other hand, collaterally attacks his conviction and must, therefore, be considered in the context of a second or successive habeas petition."); Diventura v. Wynder, No. CIV. A. 07-2846, 2007 WL 3252607, at *3 (E.D. Pa. Oct. 31, 2007), aff'd, 325 F. App'x 71 (3d Cir. 2009) ("In the context of prisoners, the only way that a Rule 60(b) motion would not be treated as a de facto AEDPA petition is if the Rule 60(b) Motion did not in any way attack the prisoner's conviction and/or sentence with an argument based upon the federal constitution, federal law or federal treaties.").

Here, Petitioner does not challenge "some defect in the integrity of the federal habeas proceedings," Gonzalez, 545 U.S. at 532, but rather seeks to collaterally attack his underlying conviction.  He contends that he "has been denied relief on a meritorious constitutional claim impacting the truth-determining function of his state court trial through an unexplained withdrawal of discretionary state-court review, ineffective assistance of counsel, and the novel interpretation of a habeas statute which does not on its face relate to retroactivity."  (Doc. No. 47 at 10.)    Furthermore, the "common core" test does not apply here because Mayle is distinguishable from this case: the test in Mayle applied to amendment of a prior habeas petition under Federal Rule of Civil Procedure 15, which is not the case here.  See Mayle, 545 U.S. at 664 ("So long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order.").  Petitioner's claim of ineffective assistance of appellate counsel is a substantive claim irrespective of when he first raised it.  As such, Petitioner's 60(b) motion is the functional equivalent of an unauthorized successive habeas petition.

### B.     Petitioner Is Not Entitled to 60(b)(6) Relief

#### 1.   Martinez v. Ryan and Cox v. Horn

Some legal background is necessary before analyzing the merits of the 60(b) Motion. Petitioner asserts that he is entitled to relief under Rule 60(b)(6) in light of the Third Circuit's recent holding in Cox v. Horn, 757 F.3d 113 (3d Cir. 2014), which discusses Martinez v. Ryan, 132 S. Ct. 1309 (2012).  Petitioner filed his original 60(b) Motion on December 22, 2014, roughly four months after Cox v. Horn was decided.

In Cox, the Third Circuit addressed whether the change in law heralded by the Supreme Court decision in Martinez v. Ryan constituted the type of "extraordinary circumstance" necessary to grant relief under 60(b)(6).  Using 60(b)(6), the petitioner in Cox moved the court to

reopen his procedurally-defaulted ineffective assistance claims because <u>Martinez</u> constituted a subsequent intervening change in law in his favor.[6]   <u>Martinez</u> changed the law by excusing procedural default for ineffective assistance of counsel claims in the following two narrow circumstances:

> [W]hen a State requires a prisoner to raise an ineffective-assistance-of-trial counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances.  The *first* is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial.  The *second* is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*.  To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.

132 S. Ct. at 1318-19 (internal citations omitted) (emphasis added).  Thus, <u>Martinez</u> permits a petitioner to show cause based on the failure of initial post-conviction counsel to raise claims of ineffectiveness of trial counsel.

Despite the additional exceptions provided by <u>Martinez</u>, <u>Cox</u> found that the change in habeas corpus law triggered by <u>Martinez</u> did not, "without more" entitle the petitioner to relief

---

[6]   When a petitioner cannot obtain state court review of his claims because of noncompliance with state procedural rules, the doctrine of procedural default generally operates to bar federal habeas review.  <u>See</u> <u>Coleman v. Thompson</u>, 501 U.S. 722, 729-32 (1991).  According to the Third Circuit, "[p]rocedural default occurs when a claim has not been fairly presented to the state courts (i.e., is unexhausted) and there are no additional state remedies available to pursue . . . ." <u>Rolan v. Coleman</u>, 680 F.3d 311, 317 (3d Cir. 2012) (citations omitted).  Upon a finding of procedural default, "federal habeas review of the claims is barred unless the [petitioner] can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." <u>Coleman</u>, 501 U.S. at 750.

Thus, procedural default will be excused if a petitioner can show cause, or a reason, for the default and prejudice resulting from the alleged federal violation.  "Cause" for default "ordinarily requires a showing of some external impediment preventing counsel from constructing or raising the claim." <u>Murray v. Carrier</u>, 477 U.S. 478, 492 (1986).  As is discussed below, <u>Martinez</u> identified narrow circumstances that could establish "cause."

under 60(b)(6).  But <u>Cox</u> set forth a framework for a district court to follow when a petitioner claims an intervening change in law as grounds for relief under 60(b)(6).  First, a district court must decide whether the claimed intervening change in law applies to the petitioner's circumstances.  Then, the Court should balance the following five equitable factors in its determination of whether 60(b)(6) relief is warranted:

> (1)  whether the 60(b) motion was brought within a reasonable time of the <u>Martinez</u> decision;
>
> (2)  the merits of the underlying ineffectiveness of counsel claim and whether the merits were considered prior to judgment;
>
> (2)  "whether the conviction and initial federal habeas proceeding were only recently completed or ended years ago";
>
> (3)  the petitioner's diligence in pursuing his ineffectiveness of counsel claims; and
>
> (4)  whether it is a capital case.

<u>Cox</u>, 757 F.3d at 124-26.  These factors are meant to provide guidance, and district courts may consider other equitable factors as appropriate.  <u>Id.</u> at 124.  The Court will address each of the <u>Cox</u> factors, as well as other equitable factors, below.

**2.  Petitioner's Procedural Default May Not Be Excused Under <u>Martinez v. Ryan</u>**

At the outset, Respondents maintain that <u>Martinez</u> does not apply in this case.  (Doc. No. 58 at 7.)  Respondents submit that <u>Martinez</u> applies only to claims of ineffectiveness of trial counsel, and not to claims of ineffectiveness of appellate counsel.  (<u>Id.</u> at 8.)  Petitioner insists that <u>Martinez</u> should be interpreted broadly to encompass claims of ineffective assistance of appellate counsel, because the fundamental principle of <u>Martinez</u>—"that a substantial constitutional claim deserves one chance to be heard"—applies with equal force to claims of ineffective assistance of appellate counsel.  (Doc. No. 47 at 42.)

15

The Circuits are split regarding the application of Martinez to procedurally defaulted claims of ineffective assistance of appellate counsel.   See generally Micah Horwitz, An Appealing Extension: Extending Martinez v. Ryan to Claims of Ineffective Assistance of Appellate Counsel, 116 Colum. L. Rev. 1299 (2016).   The majority in Martinez limited its holding to claims of ineffective assistance of trial counsel based on the facts of the case before it. The dissent in Martinez argued that the holding should apply also to claims of ineffective assistance of appellate counsel.   The majority of Circuit Courts that have had occasion to rule on this issue have held that Martinez does not apply to claims of ineffective assistance of appellate counsel.   The Fifth, Sixth, Seventh, Eighth, and Tenth Circuits have held that Martinez can only apply to excuse procedural default of ineffective assistance of trial claims.   See Long v. Butler, 809 F.3d 299, 315 (7th Cir. 2015), reh'g en banc granted, judgment vacated, No. 13-3327, 2016 WL 1621711 (7th Cir. Apr. 20, 2016);[7] Reed v. Stephens, 739 F.3d 753, 778 (5th Cir. 2014), cert. denied, 135 S. Ct. 435 (2014); Dansby v. Hobbs, 766 F.3d 809, 833 (8th Cir. 2014), cert. denied sub nom. Dansby v. Kelley, 136 S. Ct. 297 (2015); Hodges v. Colson, 727 F.3d 517, 531 (6th Cir. 2013); Banks v. Workman, 692 F.3d 1133, 1148 (10th Cir. 2012).   The Ninth Circuit is the only Circuit that has held that Martinez extends to apply to ineffective assistance of appellate counsel claims.   See Ha Van Nguyen v. Curry, 736 F.3d 1287, 1289 (9th Cir. 2013).[8]

---

[7]   In Long, judgment was vacated and en banc argument was ordered on a matter unrelated to the Martinez issue.  2016 WL 1621711, at *1.

[8]   In the Amended Motion, Petitioner requested that the Court withhold judgment while the Supreme Court considered a petition for a writ of certiorari before it on the issue of whether the Martinez holding applies to claims of ineffective assistance of appellate counsel.   The Supreme Court denied the petition for a writ of certiorari in that case on October 5, 2015. See Dansby v. Kelley, 136 S. Ct. 297 (2015).

Petitioner urges the Court to follow the Ninth Circuit and find that <u>Martinez</u> applies to his claim of ineffective assistance of appellate counsel.  The Court declines extend <u>Martinez</u> beyond its narrow holding, and instead will follow the guidance of the majority of Circuits that have ruled on the issue.  Accordingly, <u>Martinez v. Ryan</u> does not afford Petitioner "cause" for his procedural default in this case, and for that reason alone Petitioner is not entitled to relief.  <u>See</u> <u>Norris v. Brooks</u>, 794 F.3d 401, 405 (3d Cir. 2015) ("an unstated but critical premise of *Cox* and our other Rule 60(b) cases is that a change in the law doesn't even begin to support a Rule 60(b) motion unless the change is actually relevant to the movant's position.").

### 3.  Even if <u>Martinez v. Ryan</u> Applied, Petitioner Would Not Be Entitled to 60(b) Relief

As noted above, the Third Circuit in <u>Cox</u> enumerated the following significant factors in analyzing Rule 60(b)(6) motions brought in light of <u>Martinez</u>:

> (1) whether the 60(b)(6) motion was brought within a reasonable time of the *Martinez* decision; (2) the merits of a petitioner's underlying ineffective assistance of counsel claim which can affect whether relief based on *Martinez* is warranted; (3) whether the conviction and initial federal *habeas* proceeding were only recently completed or ended years ago; and (4) the petitioner's diligence in pursuing review of his ineffective assistance of counsel claim.

<u>Joseph v. Beard</u>, No. CIV. A. 02-2744, 2015 WL 1443970, at *5 (E.D. Pa. Mar. 27, 2015) (citing <u>Cox</u>, 757 F.3d at 155-16, 124-26).  Additionally, the <u>Cox</u> court cited the gravity of a petitioner's sentence as another important factor.  The Court will address each of these five factors, as well as other equitable factors, in turn.

### a.  Timeliness of the 60(b) Motion

At the outset, the Third Circuit in <u>Cox</u> distinguished as a "critical" factor whether the 60(b) motion was brought "within a reasonable time" of <u>Martinez</u>.  <u>Cox</u>, 757 F.3d at 115-16.  The Third Circuit stated:

> It is not disputed that the timing of the 60(b)(6) motion before us—filed, as it was, roughly ninety days after *Martinez*—is close enough to that decision to be deemed reasonable. *Still, though not an issue before us, it is important that we acknowledge—and, indeed, we warn—that, unless a petitioner's motion for 60(b)(6) relief based on Martinez was brought within a reasonable time of that decision, the motion will fail.*

Id. at 116 (emphasis added).

Respondents argue that Petitioner's Motion was not filed within a reasonable time, and that the Motion "fails on this basis alone." (Doc. No. 58 at 6.) Petitioner filed the initial Motion for 60(b) relief on December 22, 2014—two years and nine months after the Supreme Court decided Martinez on March 20, 2012.[9] Petitioner contends that the "reasonable time" calculation should start with the Cox decision rather than the Martinez decision; however, Petitioner maintains that the timing of his filing was reasonable using either start date.[10] (Doc. No. 72 at 2.)

The law in this Circuit is clear that the relevant period covers the time between the Martinez decision and a petitioner's 60(b) motion. See Cox, 757 F.3d at 116 ("unless a petitioner's motion for 60(b)(6) relief based on *Martinez* was brought within a reasonable time of *that decision*, the motion will fail) (emphasis added); Peterson v. Brennan, No. CIV. A. 97-3477, 2015 WL 3631762, at *3 (E.D. Pa. June 10, 2015), certificate of appealability denied (Oct. 14, 2015) ("The Court rejects Peterson's argument that the Rule 60(b) Motion was timely because he filed it within 87 days after the Court of Appeals decided *Cox*."); Coades v. Chester Cty. Court PA-Trial Court, No. CIV. A. 12-2660, 2015 WL 3947495, at *3 (E.D. Pa. June 26, 2015) ("Coades's reliance on *Cox* to excuse his delay is misplaced.").

---

[9]   As noted, Petitioner filed a counseled Amended Motion on August 17, 2015. (Doc. No. 47.)

[10]  Petitioner urges the Court to analyze "reasonable time" in relation to the Cox decision, asserting that Petitioner's filing 137 days after Cox is "[lightning] speed for a pro se litigant in a prison setting." (Doc. No. 72 at 9.)

The Third Circuit in Cox did not define a "reasonable time," though it did note that a delay of 90 days was reasonable.  District courts have repeatedly concluded that multi-year delays are unreasonable.  For example, the court in Durham v. Piazza recently stated:

> The Court concludes that Durham's Rule 60(b) Motion, in which he seeks relief from the Court's Order dated February 11, 2011, based on *Martinez,* was not brought within a reasonable time. *Martinez* was decided on March 20, 2012. Durham filed the Rule 60(b) Motion on December 29, 2014, more than thirty-three months thereafter, and more than thirty-one months after the Court of Appeals declined to address his *Martinez* claims on rehearing by Order dated May 24, 2012. That constitutes an unreasonable delay in filing the Rule 60(b) Motion. Durham's argument that his Rule 60(b) Motion is timely because he filed it within four months after the Court of Appeals decided *Cox,* is rejected for the reasons that follow.

No. CIV. A. 07-4338, 2015 WL 3647285, at *3 (E.D. Pa. June 12, 2015) (footnote omitted).  A number of decisions have echoed this view.  See, e.g., Murray v. Diguglielmo, No. CV 09-4960, 2016 WL 3476255, at *4 (E.D. Pa. June 27, 2016) (where four years passed between Martinez and petitioner's motion, "[t]his factor certainly weighs against finding that *Martinez* constitutes an "extraordinary circumstance."); Graves v. Beard, No. 2:10-CV-00894, 2014 WL 7183404, at *11 (W.D. Pa. Dec. 16, 2014), certificate of appealability denied (Aug. 13, 2015) ("Although the Third Circuit did not define what constitutes a reasonable time for filing a Rule 60(b)(6) motion premised on *Martinez* the Court concludes that waiting almost two full years after *Martinez* to file the instant Motion does not satisfy the 'reasonable time' requirement."); Joseph, 2015 WL 1443970, at *5 ("Assuming the *Martinez* case to be a starting point (equivalent to the final judgment) to determine the 'reasonable time' in which to file the Rule 60 motion, the filing of Petitioner's motion two years after the *Martinez* case was decided is unreasonably late."); Taylor v. Wetzel, No. 4:CV-04-553, 2014 WL 5242076, at *8 (M.D. Pa. Oct. 15, 2014) ("the Court concludes that waiting one year to file the instant motion may not satisfy the 'reasonable time' requirement").

In defense of the 33-month delay between the <u>Martinez</u> decision and Petitioner's 60(b) Motion, Petitioner states, "Petitioner's trips to the law library became less frequent, as the bad news continued to roll-in regarding unsuccessful *Martinez*-60b petitioners."  (Doc. No. 72 at 8.) In a stipulation filed in lieu of an evidentiary hearing, the parties presented the following facts regarding the timing of Petitioner's filing:

- Jorge Fratecelli, a fellow prisoner and a friend of Petitioner, who had "assumed an official role as a law clerk" at the prison law library, advised Petitioner on his prospects for legal relief following the Supreme Court's denial of Petitioner's claim.  (Doc. No. 79 at 1.)  Fratecelli initially told Petitioner that, "in his view, there was nothing that could be done to challenge [Petitioner's] conviction."  (<u>Id.</u> at 2.)  The law library would be updated with new cases "about every 4 to 8 weeks" and by the time Petitioner became aware of the <u>Martinez</u> decision, Fratecelli had "started to learn of multiple decisions in the district courts in the Third Circuit denying 60(b) relief under <u>Martinez</u>."  (<u>Id.</u>)  Fratecelli became aware of <u>Cox</u> several weeks after it was decided, and he immediately "sought out Mr. Greene to advise him that 'this was his chance' to have his claim heard on the merits." (<u>Id.</u>)  Fratecelli guided Petitioner through the process of filing a pro se 60(b) Motion in this Court.  (<u>Id.</u>)

- Isabel McGinty, an attorney assigned to represent Petitioner in the appeal of the District Court's denial of his Habeas Petition, continued representing Petitioner through his appeal to the Supreme Court.  McGinty tried repeatedly to contact Petitioner after the Supreme Court denied relief, advising in her letters that although she and her co-counsel could not continue to represent Petitioner, they had been "discussing whether there are steps that might be taken on [Petitioner's] behalf," including finding an attorney licensed

in Pennsylvania to assist Petitioner in exploring his options.[11]  (Doc. No. 72 at 5, Exs. D, E, F.)

- ▪ Petitioner states that he does not recall receiving the above-referenced letters.  (Doc. No. 79 at 3.)  Mail records from Petitioner's prison were submitted to the Court, but they do not definitively show that Petitioner did not receive the letters because the earliest recorded date in the mail log is February 19, 2014, nearly two years after McGinty sent her last letter.

- ▪ Petitioner learned, based on his own research and the Fratecelli's advice, that no 60(b) motions filed after <u>Martinez</u> had been successful.  However, after <u>Cox</u> was decided, he "worked on the 60(b) motion diligently, and filed it as quickly as he could."  (Doc. No. 79 at 4.)

---

[11]  A February 15, 2012 letter from McGinty stated: "We have been discussing whether there are steps that might be taken on your behalf, but I wait [sic] to hear back from you.  I don't know whether you would want to see about getting an attorney licensed to practice in Pennsylvania to follow up from here, or whether you are seeking for us to keep brainstorming this and seeing what we can suggest."  (Doc. No. 72, Ex. D.)  In her next letter to Petitioner, McGinty reminded him that she would be shutting down her private practice and had been attempting to find a private attorney in Pennsylvania to work on Petitioner's case.  (Doc. No. 72, Ex. E.)  In the letter, she noted that she had not heard from Petitioner in several months and asked that Petitioner respond to her promptly because she would be leaving private practice shortly.  (<u>Id.</u>)  In her final letter to Petitioner on May 31, 2012, McGinty wrote:

> I have accepted a position that is within the New Jersey Judiciary and it means that I am shutting down my private law office in the very near future.  Please let me know if you want me to follow up on legal issues that related to the case that I handled for you before the Third Circuit Court of Appeals.  As I tie up all the matters remaining from my law practice, I have very limited availability and only a few weeks left to finish up my cases.  If you want me to do anything further for you, please write and let me know that.  In the meantime, I wish you good health and success down the road.  It has been my pleasure to have represented you.  I hope to hear back from you soon, and that you are well.

(Doc. No. 72, Ex. F.)

Petitioner claims that he was waiting for responses from his Supreme Court attorneys for months after the <u>Martinez</u> decision, and he did not receive the letters from his attorneys indicating that they were awaiting his response. He further asserts that even had he received the letters, they did not contain advice about filing a 60(b) motion, and "held out no hope or plan for Petitioner to follow." (Doc. No. 72 at 7, 9.)

Upon review of the additional evidence provided in support of the reasonableness of the delay in filing Petitioner's 60(b) motion, the Court concludes that this "critical" factor weighs against granting relief. Courts have routinely held that a delay of two-plus years is unreasonable, and the additional evidence provided by Petitioner does not justify that delay.

### b.  Merits of the Underlying Ineffective Assistance of Counsel Claims

Regarding the merits of the underlying ineffective assistance claims, the Third Circuit stated in <u>Cox</u>:

> It is appropriate for a district court, when ruling on a Rule 60(b)(6) motion where the merits of the ineffective assistance claim were never considered prior to judgment, to assess the merits of that claim. *See Lasky*, 804 F.2d at 256 n. 10. After all, the *Martinez* exception to procedural default applies only where the petitioner demonstrates ineffective assistance by post-conviction counsel, as well as a "substantial" claim of ineffective assistance at trial. *Martinez*, 132 S.Ct. at 1318. When 60(b)(6) is the vehicle through which *Martinez* is to be given effect, the claim may well need be particularly substantial to militate in favor of equitable relief. A court need not provide a remedy under 60(b)(6) for claims of dubious merit that only weakly establish ineffective assistance by trial or post-conviction counsel.

<u>Cox</u>, 757 F.3d at 124-25 (footnote omitted).

According to Petitioner, "the IAAC claim is strong, as the *Gray* violation was blatant and prejudicial and appellate counsel's failure to advise Petitioner to raise it in a petition for *certiorari* was egregious." (Doc. No. 47 at 8.) Yet, while Petitioner's underlying claim of a <u>Gray</u> violation is arguably meritorious, this is a claim of ineffective assistance of appellate counsel, not ineffective assistance of trial or post-conviction counsel. As previously noted, the

Court will not follow the Ninth Circuit in holding that <u>Martinez</u> applies to claims of ineffective assistance of appellate counsel.  Therefore, because Petitioner has not presented a "substantial" claim of ineffective assistance *at trial*, this factor weighs against relief.[12]

### c.  Timing of the Underlying Conviction and Habeas Proceedings

With regard to the timing of a petitioner's conviction, habeas petition, and 60(b) motion, the Third Circuit stated:

> Principles of finality and comity, as expressed through AEDPA and habeas jurisprudence, dictate that federal courts pay ample respect to states' criminal judgments and weigh against disturbing those judgments via 60(b) motions. In that vein, a district court reviewing a habeas petitioner's 60(b)(6) motion may consider whether the conviction and initial federal habeas proceeding were only recently completed or ended years ago. Considerations of repose and finality become stronger the longer a decision has been settled.

<u>Cox</u>, 757 F.3d at 125.

In light of this guidance, district courts have found that long passages of time weigh against granting 60(b) relief.  <u>See, e.g.</u>, <u>Joseph</u>, 2015 WL 1443970, at *6 (where petitioner was convicted over 30 years ago and his habeas petition was denied 10 years ago, "The passage of time strengthens this Court's determination of the repose and finality of the final judgment that Petitioner seeks to reopen, and militates against granting equitable relief under Rule 60(b)(6)."); <u>Taylor</u>, 2014 WL 5242076, at *9 (where petitioner's conviction was affirmed in 1993 and habeas relief was denied in 2004, and in light of other <u>Cox</u> factors, "the Court concludes that the rare

---

[12]  In a recent precedential opinion, the Third Circuit reversed the denial of a habeas petition involving a Confrontation Clause violation.  <u>Brown v. Superintendent Greene SCI</u>, No. 14-2655, 2016 WL 4434398, at *1 (3d Cir. Aug. 22, 2016).  <u>Brown</u> is distinguishable, however, because the violation was based on the prosecutor's closing remarks, in which she specifically identified petitioner as "the other guy" in redacted statements in violation of <u>Bruton v. United States</u>, 391 U.S. 123 (1968).  The Third Circuit noted, "[w]e expect that this case will be the exception rather than the norm."  <u>Id.</u> at *14.

relief afforded under Rule 60(b)(6) is not warranted."); <u>Ortiz v. Pierce</u>, No. CV 08-487-LPS, 2014 WL 3909138, at *2 (D. Del. Aug. 11, 2014) (where habeas petition was dismissed in October 2009, the court stated, "Considering the significant amount of time that has elapsed between the dismissal of his Petition and the *Martinez* decision, the Court concludes that the rare relief afforded under Rule 60(b)(6) is not warranted.").

In this case, Petitioner's trial concluded 18 years before he filed the instant Motion, and his federal habeas proceedings concluded 3 years prior to the filing of the Motion.  Given the unusual circumstances of this case—which included appeals to the Third Circuit and the Supreme Court—these delays may have been reasonable, and for the purposes of this analysis the Court finds that this factor is neutral.

### d.  Diligence in Pursuing Review

A petitioner's diligence in pursuing review of his claims is another important factor in the Rule 60(b) analysis.  <u>Cox</u>, 757 F.3d at 126.  According to Petitioner, "[o]nce *Cox* alerted him that the *Martinez* decision could serve as a factor in creating the extraordinary circumstances necessary to review procedural default of the IAAC claim under Rule 60(b)(6), Petitioner quickly filed his 60(b) motion" four months later.  (Doc. No. 47 at 44.)  As noted above, the Court declines to measure the timeliness of Petitioner's filing from the date of the decision in <u>Cox</u>.  Likewise, the Court assesses Petitioner's diligence in part based on the steps he took following <u>Martinez</u>.  Petitioner waited two years and nine months after <u>Martinez</u> to file the instant Motion.  The Court concludes that this factor weighs against Petitioner.  See <u>Strum v. Palakovich</u>, No. CIV. A. 05-5280, 2015 WL 1255907, at *4 (E.D. Pa. Mar. 19, 2015), <u>certificate of appealability denied</u> (Sept. 2, 2015) (finding lack of diligence where petitioner filed his 60(b) motion seven years after the denial of his habeas petition and two years after <u>Martinez</u>).

### e.   Gravity of Petitioner's Sentence

In deciding a 60(b) motion invoking <u>Martinez</u>, a district court should consider the seriousness of the petitioner's sentence.  The Third Circuit stated in <u>Cox</u>:

> A special consideration arises in this case, as well. Courts must treat with particular care claims raised in capital cases. *Burger v. Kemp,* 483 U.S. 776, 785, 107 S. Ct. 3114, 97 L.Ed.2d 638 (1987) ("Our duty to search for constitutional error with painstaking care is never more exacting than it is in a capital case."). Although Cox did not receive a capital sentence for the murder of Davis, that murder conviction was used as an aggravating factor in arriving at a death sentence in a separate case, albeit one that is still under habeas review. That fact is significant.

757 F.3d at 126.  Thus, the court took special note of the fact that the case it was reviewing had influenced Cox's capital conviction in another case.

In this case, Petitioner is serving a life sentence without the possibility of parole. Petitioner's sentence is undoubtedly severe, but it does not demand the same "exacting" and "painstaking" attention devoted to constitutional claims in capital cases.

### f.   Other Equitable Factors

Petitioner urges the Court to consider the following additional equitable factors in analyzing whether "extraordinary circumstances" justify 60(b) relief in this case.

First, Petitioner avers that "[s]tate and federal court orders and opinions over the past decade have—rightly or wrongly—protected institutional, procedural, and structural interests at the expense of Petitioner's ability to litigate the *Gray* claim."  (Doc. No. 47 at 48.)  As one example, Petitioner cites the Pennsylvania Supreme Court's "one-sentence order without explanation" withdrawing discretionary review on the <u>Gray</u> issue.  (<u>Id.</u>)   Had the Pennsylvania Supreme Court not withdrawn its grant of review, Petitioner argues, he would have had a forum in which to argue that a <u>Gray</u> violation had occurred in his trial.  (<u>Id.</u> at 49.)

As a second example, Petitioner contends that the opinions of the PCRA trial court and the PCRA appellate court are inconsistent because the PCRA trial court rejected all of Petitioner's pro se PCRA claims on the merits by finding that appointed PCRA counsel conducted a thorough review, while the PCRA appellate court found the ineffective assistance of appellate counsel claim waived because Petitioner and PCRA counsel had not been thorough. (Id.)  Petitioner contends that the PCRA appellate court "protected its own interest in the uniform content of briefs at the expense of ensuring that Petitioner would receive the 'in-depth examination of the case' which the filing and acceptance of the 'no merit' letter entailed under Commonwealth v. Finley, 550 A.2d 213, 215 (Pa. Super. Ct. 1988)."  (Id.)

The final example cited by Petitioner is the decision of the Supreme Court of the United States in his case.  According to Petitioner, "the Supreme Court was the last in a line of courts to protect a procedural or structural interest at the expense of Petitioner's ability to litigate a meritorious claim related to the jury's truth-seeking function."  (Id. at 50.)

As a second equitable factor warranting consideration, Petitioner argues that irregularities in the trial and appellate process "detract from the confidence this Court should have in the verdict."  (Doc. No. 47 at 50.)  In support, Petitioner argues that the trial court's finding of overwhelming evidence against Petitioner was based on "weak evidence and a circus-like trial." (Id. at 52.)  These trial and appellate irregularities, Petitioner argues, "magnify the impact and inequity of the *Gray* error."  (Id. at 53.)

These are compelling arguments; however, the Cox factors in this case weigh heavily against relief and Petitioner's additional proffered support is not enough to warrant 60(b) relief in this case.  While Petitioner's quandary is "an unusual one" and, indeed, an unfortunate one, it is

also "one of his own creation." Greene v. Fisher, 132 S. Ct. 38, 45 (2011). Given the above analysis, it is no stretch to conclude that Petitioner is not entitled to 60(b) relief in this case.

## V.      A CERTIFICATE OF APPEALABILITY SHALL ISSUE IN THIS CASE

A district court shall issue a certificate of appealability only if a petitioner establishes "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). The COA requirement is "[t]he primary means of separating meritorious from frivolous appeals" that would "delay[ ] the States' ability to impose sentences." Wilson v. U.S. Parole Comm'n, 652 F.3d 348, 351 (3d Cir. 2011) (quoting Barefoot v. Estelle, 463 U.S. 880, 892-93 (1983)).

The Court's denial of 60(b) relief is based primarily on the inapplicability of Martinez to this case and the untimeliness of Petitioner's filing. Because the Court is treating the 60(b) Motion as a successive habeas petition, and there may be room for debate on the issues in this Opinion, a COA will issue.

## VI.     CONCLUSION

For the foregoing reasons, Petitioner's Motion for Relief under Federal Rule of Civil Procedure 60(b)(6) will be denied. An appropriate Order follows.